IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SANFORD POBURSKY and WANDA POBURSKY, <br><br> Plaintiffs, <br> v. <br> MADERA COUNTY, et al., <br><br> Defendants. | 1: 07 - CV - 0611 AWI DLB <br><br> MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND <br><br> (Documents #5 & #6) |

This action stems from an incident in which Plaintiff James Pobursky and Plaintiff Wanda Pobursky ("Plaintiffs") were arrested and their children taken into Child Protective Services ("CPS")'s custody. Plaintiffs allege violations of their constitutional rights and RICO. This court appears to have jurisdiction pursuant to 28 U.S.C. § 1331. Because the events at issue occurred in this court's judicial district and division, venue is appropriate.

**BACKGROUND**

On April 23, 2007, Plaintiffs filed a complaint. The first cause of action alleges a violation of the Fourth Amendment and is apparently brought pursuant to 42 U.S.C. § 1983. The second and third causes of action allege violations of the Fifth Amendment and Fourteenth Amendment and are apparently brought pursuant to 42 U.S.C. § 1983. The complaint appears to contain a fourth cause of action alleging violations of RICO. The complaint appears to also request relief under 42 U.S.C. § 1983 against supervisors and to allege a conspiracy pursuant to

42 U.S.C. § 1983 and 42 U.S.C. § 1985.

On May 11, 2007, Defendant County of Madera, Defendant County of Madera's agencies and sub-divisions, and Defendant County employees ("County Defendants") filed a motion to dismiss, or in the alternative a motion for a more definite statement.   County Defendants ask that the County of Madera's agencies and sub-divisions be dismissed as redundant defendants. County Defendants contend that the complaint fails to state a claim against the County of Madera.   County Defendants contend that the complaint improperly asserts the constitutional rights of others.   County Defendants contend that the complaint fails to link the alleged Fourth Amendment violations to many of the Defendants.   County Defendants contend that the complaint fails to state a Fifth Amendment violation for malicious prosecution, a Fourteenth Amendment claim for loss of familial association, a claim for conspiracy under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, or a claim for RICO violations.

On May 11, 2007, Defendant Madera County Superior Court, Defendant Family Court Services of Madera County, Defendant Judges, and Defendant John Johnson ("Court Defendants") filed a motion to dismiss.   Court Defendants contend that the complaint's claims against Court Defendants are barred by the Eleventh Amendment.   Court Defendants contend that Defendant Judges and court personal are immune from liability.   Court Defendants contend that Plaintiffs have not pled the elements of a RICO claim.

On June 6, 2007 and June 18, 2007, Plaintiffs filed verified answers to Defendants' motions, which appear to be oppositions to the motions to dismiss.   In these documents, Plaintiffs dispute may of the facts Defendants' motion states are at issue in this action.   In the opposition Plaintiffs state that they are not asserting the rights of their children.   Plaintiffs ask to be able to file an amended complaint to allege what areas they believe they had an expectation of privacy in, allege how each Defendant was involved, allege additional facts about their familial relationship, and allege additional facts under RICO.

On June 20, 2007, County Defendants filed a reply brief. On June 20, 2007, Court

1  Defendants filed a reply brief.

## LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990). A Rule 12(b)(6) dismissal can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).

Essentially, a motion to dismiss for failure to state a claim tests the plaintiff's compliance with the liberal requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure. See 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294-96. Rule 8(a)(2) requires a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). Rule 8(a)(2) requires sufficient allegations to put defendants fairly on notice of the claims against them. McKeever v. Block, 932 F.2d 795, 798 (9th Cir.1991); Lynn v. Sheet Metal Workers' Intern. Ass'n, 804 F.2d 1472, 1482 (9th Cir. 1986). "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002); see also Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1976 (2007) (quoting Swierkiewicz). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim

3

that were not initially pled." <u>Bruns v. Nat'l Credit Union Admin.</u>, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982)).

## ALLEGED FACTS

The complaint alleges that on July 7, 2006, Madera County Sheriff Sargent Karl Hancock and Deputy Brian Dee Cunnings approached Plaintiff James Pobursky ("Plaintiff James") in the front yard of a house by a parked van.  Later, Deputy Jacob Tallmon, Deputy J. Adkins, and Deputy Chris Swanson arrived.

The complaint alleges that Sargent Hancock and Deputy Cunnings asked Plaintiff James if Jami Pobursky ("Jami") was there because they had a warrant for her arrest.  The complaint alleges that they did not have a search warrant for the house.  That complaint alleges that Plaintiff James told the deputies that this was not Jami's house, people were tired of being harassed, and the deputies had been told many times that Jami did not live there.  The complaint alleges that Sargent Hancock then got angry and stated that if they found Jami in the house, Plaintiff James would be arrested for aiding and abetting.

The complaint alleges that Deputy Cunnings then saw Plaintiff James's daughter, Shawni, who suffers from a disability, standing in the front seat of a parked van.  The complaint alleges that Deputy Cunnings approached the van and opened the door, creating a hazzard for Shawni. The complaint alleges that upon seeing that his daughter was about to fall, Plaintiff James reached over to stabilize her, without touching the deputy.  The complaint alleges that Deputy Cunnings then turned around and shoved Plaintiff James back, causing Plaintiff James to fall. The complaint alleges that Deputy Cunnings then put handcuffs on Plaintiff James, handcuffing him so tightly that his right middle finger and hand became numb.

The complaint alleges that Plaintiff James was placed in the back seat of the Sheriff's truck in 80-90 degree heat for five hours.  The complaint alleges that Plaintiff James's clothing was caught in the truck's door, and he began banning on the door to free his leg.  The complaint alleges that Deputy Tallmon approached the truck and unprofessionally stated to James: "If you

4

don't stop banging on the car, I will kick your fucking ass."

The complaint alleges that the deputies terrorized Plaintiff Wanda Pobursky ("Plaintiff Wanda").

The complaint alleges that the deputies were chain smoking and blew smoke in Shawni's face.  The complaint alleges that Deputy Hancock jerked Elisah's arm so hard that it felt like it was being pulled out of it's socket.

The complaint alleges that the deputies searched "Linda's" house, which is adjoining to Jami's alleged residence, and the van outside without a search warrant.   The complaint alleges that the deputies took keys out of Linda's purse, but claimed they were lying out in plain sight.  The complaint alleges that the deputies then went into Jami's alleged home, with guns drawn, violating Plaintiffs' Fourth Amendment rights.

The complaint alleges that the deputies told Plaintiff Wanda that if she did not identify herself they would completely trash her home.   The complaint alleges that when Plaintiff Wanda did not identify herself, the deputies trashed her home.  The complaint alleges that Plaintiff Wanda was arrested for obstructing and delaying a police officer.  The complaint alleges that Plaintiff Wanda was nursing her baby, and asked to be able to take the baby with her.   The complaint alleges that the baby was taken away from Plaintiff Wanda.

The complaint alleges that Plaintiff Wanda was not told what she was charged with and Plaintiff James was only advised of a charge of assault on an officer.   The complaint alleges that Plaintiffs were never shown a search warrant.  The complaint alleges Plaintiffs were never Marandized.   The complaint alleges that during transportation to the jail, Plaintiff James was not seat belted and the deputy drove erratically and over the speed limit.

The complaint alleges that at the jail, Plaintiff James was not fed and kept in a bathroom/ dressing room all night.   The complaint alleges that Plaintiff Wanda was put in a cell without a bench and was forced to sit on a filthy floor all night.   The complaint alleges that the next day, when Plaintiff Wanda stated she was a nursing mother and needed a breast pump, Plaintiff

5

Wanda was told that they were not going to help her because she had not identified herself. The complaint alleges that Sergeant Ackerman told Plaintiff Wanda to relieve herself in the sink.

Plaintiffs' children were apparently taken into CPS's custody. The complaint alleges that at one time a deputy stated that if "those fucking children won't talk, wait until we separate them." The complaint alleges that some of the children were transported without being seat belted. The complaint alleges that once taken away, the children's religious diet was not respected and they were shown R rated movies. The complaint alleges that "Linda," and Plaintiffs' daughter, Christiana, could have stayed with the children. The complaint alleges that Plaintiff James' sister-in-law, Geri, also called Lynn Annete Hunt of CPS and asked to take the children, for which Plaintiffs would have given their permission, but she was refused.

The complaint alleges that when Plaintiffs were released from jail, they were released into 104 degree heat and without any cash. The complaint alleges that it took Plaintiffs six and a half hours to get back to their residence.

The complaint alleges that on July 15, 2006, Deputy Cunnings stopped Plaintiffs' van without probable cause. The complaint alleges that Deputy Cunnings stated he was "just looking for her," opened the vans doors, and searched the van unlawfully.

The complaint alleges that on August 5, 2006, Deputy Tallmon stopped Plaintiff James on a country road. The complaint alleges the van was unlawfully impounded.

## DISCUSSION

**A. Rule 8**

Preliminarily, the court notes that the complaint does not contain a short and plain statement the Plaintiffs' claims and does not sufficiently puts Defendants on notice of the claims against them. Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief," <u>see</u> Fed. R. Civ. P. 8(a), and mandates that "[e]ach averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(e)(1). In their opposition, Plaintiffs appear to admit that the complaint is deficient, and Plaintiffs ask for leave to file an amended

complaint. When dismissing a complaint, the Ninth Circuit has stated that "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir.2001) (internal quotation marks omitted); Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. (9th Cir. 1996). In addition, prior to dismissal of an action, the court should give Plaintiffs notice of the complaint's pleading deficiencies. See Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (if court determines that complaint fails to state claim, leave to amend may be granted to extent that complaint's deficiencies can be cured); Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987) (prisoner must be given notice of deficiencies and opportunity to amend prior to dismissing for failure to state a claim). Thus, as discussed more fully below, the court will dismiss the complaint with leave to amend. However, leave to amend will not be granted to the extent the complaint's defects cannot be cured.

Any amended complaint should be short and to the point, containing only those facts necessary to state one or more claims against each Defendant. Plaintiffs' amended complaint should not contain legal arguments, citations to legal authority, or unnecessary background information. The function of the complaint is to place each defendant on notice as to the plaintiff's claims. It is not the function of the complaint to list every single fact relating to Plaintiffs' claims and it is not the function of the complaint to include all of the evidence in Plaintiffs' possession that they intend to use to support the claims. When filing any amended complaint, Plaintiffs must submit an amended complaint to the court that meets the requirements of Rule 8.

**B. Linkage**

The complaint alleges violations of Plaintiffs' Fourth Amendment rights, Fifth Amendment rights, and Fourteenth Amendment rights. The Civil Rights Act allows suits against state actors for actions taken under state law that violate the Constitution, and reads in part:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  In order to state a claim for relief under Section 1983, a plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of the plaintiff's federal rights.

The complaint does not link all of the Defendants to particular causes of action.  The complaint alleges that Defendants Tallmon, Cunnings, Hancock, Adkins, and Swanson were present during the search, arrest, and use of force.  However, the complaint fails to link other defendants to any of the alleged violations of civil rights.  For example, no factual allegations have been made regarding Defendants Anderson, LiCalsi, Gross, Wyatt, Allen, Blackburn, Huston, Emper, Bradshaw, and Mills.  Because Plaintiffs have failed to link all of the named Defendants with some affirmative act or omission, Plaintiffs' complaint must be dismissed.

Plaintiffs have asked to for leave to file an amended complaint that better shows how each Defendant was involved.  If Plaintiffs choose to amend the complaint, Plaintiffs must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiffs' constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's

actions and the claimed deprivation.  May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980).

**C.  Liability of Defendant Madera County**

Local governments can be subject to liability under 42 U.S.C. § 1983.  Monnell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).  However, a local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability.  Monell, 436 U.S. at 691; Fuller v. City of Oakland, 47 F.3d 1522, 1534 (9th Cir. 1995).  Rather, to state a claim for municipal liability, a plaintiff must allege that he or she suffered a constitutional deprivation that was the product of a policy or custom of the local government unit.  See City of Canton, Ohio, v. Harris, 489 U.S. 378, 385 (1989).   Thus, prevail on their claims against the County of Madera, Plaintiffs must show that: (1) There was a violation of Plaintiffs' constitutional rights, and (2) The County of Madera's policy or custom caused the violation.  See Monell, 436 U.S. at 690-92.

In this action, the complaint does not allege that Defendants' actions were a result of the County of Madera's official policy or custom.   Thus, the complaint fails to allege a civil rights violation by the County of Madera.  Plaintiffs should be mindful of the limited way a municipality can be liable when filing any amended complaint.

**D.  Municipal Departments and Subdivisions**

A claim for civil rights violations pursuant to 42 U.S.C. § 1983 requires a "person" who acted under color of state law.  42 U.S.C. § 1983.   Local governmental units, such as counties or municipalities, are considered "persons" within the meaning of Section 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 70 (1989); Monell, 436 U.S. at 690-91 & n. 54 (1978); County of Los Angeles v. Superior Court,  68 Cal.App.4th 1166, 1171 (1998).   However, municipal departments and sub-units, including police departments, are generally not considered "persons" within the meaning of Section 1983.  United States v. Kama,  394 F.3d 1236, 1239 (9th Cir. 2005) (Ferguson, J., concurring) (findings municipal police departments and bureaus are generally not considered "persons" within the meaning of 42 U.S.C. § 1983); Vance v. County of

9

Santa Clara, 928 F.Supp. 993, 995-96 (N.D.Cal.1996) (holding that "naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality," and dismissing the Santa Clara Department of Corrections from the action); Brockmeier v. Solano County Sheriff's Dept., 2006 WL 3760276, *4 (E.D.Cal. 2006) (finding that sheriff's department is a municipal department and not a proper defendant for purposes of plaintiff's § 1983 claims).

In this action, the complaint lists the Sheriff's Department of Madera County, Madera County District Attorney's Office, Madera County Department of Corrections, Madera County Adult Probation Department, Madera County Department of Social Services, Madera County Child Protective Services, and County of Madera Risk Management Division.  It appears that these Defendants are sub-divisions and departments within Defendant Madera County.  As such, naming these sub-divisions and departments is not necessary.  They should not be listed as Defendants in any amended complaint unless Plaintiffs have a good faith belief that these entities are not sub-divisions and departments within Defendant Madera County.  See Fed.R.Civ.Pro. 11.

**E.  Supervisor Defendants**

The complaint names several Defendants who appear to be the supervisors of other Defendants.  there is no respondeat superior liability under Section 1983. Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002).  To show a supervisor's liability, the plaintiff must show: (1) The supervisor's personal involvement in the constitutional deprivation, or (2) A sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir.2001).  Supervisors can be held liable if they play an affirmative part in the alleged deprivation of constitutional rights by setting in motion a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict the constitutional injury. Graves v. City of Coeur D'Alene, 339 F.3d 828, 848 (9th Cir.2003) (*citations omitted*) (quoting Rise v. Oregon, 59 F.3d 1556, 1563 (9th Cir.1995); Larez v. City of LA, 946 F.2d 630, 646 (9th Cir.1991)).  "Supervisory liability is imposed against a

supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir. 2005) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.1991)).

The complaint does not allege how any of the supervisor defendants were involved in the alleged constitutional violations. There are no allegations that the supervisor defendants actions somehow caused other defendants to commit constitutional violations. Thus, the complaint fails to allege a civil rights violation by supervisor defendants. Plaintiffs should be mindful of the limited way supervisors can be liable when filing any amended complaint.

**F.  Immune Defendants**

The complaint lists several entities that appear to be immune from suit: State Judges, the State of California, the Superior Court of Madera, and the United States Government.

*1.  Defendant State Judges*

State court judges are immune from liability under 42 U.S.C. § 1983. Olsen v. Idaho State Bd. of Medicine, 363 F.3d 916, 922 (9th Cir. 2004); Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986). Court clerks have absolute quasi-judicial immunity when they perform tasks that are an integral part of the judicial process. Mullis v. United States Bankr. Court, 828 F.2d 1385, 1390 (9th Cir. 1987). The claims against Defendant Judges are based on alleged errors and violations taken by Defendant Judges while acting as judges of the Madera County Superior Court. The Defendant Judges and Defendant John Johnson are immune from suit. Thus, these defendants will be dismissed without leave to amend.

*2.  State of California*

A state is not a "person" within the meaning of 42 U.S.C. § 1983. Will, 491 U.S. at 69-71. "The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." Brooks v. Sulphur Springs Valley Elec. Co., 951 F.2d 1050, 1053 (9th Cir.

11

1991); see also Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Puerto Rico Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993).   Because the State of California is not person within the meaning of 42 U.S.C. § 1983, this action cannot proceed as to this Defendant.

Accordingly, Defendant State of California will be dismissed without leave to amend.

**3.  Defendants Superior Court and Superior Court Subdivisions**

It is not completely clear who Plaintiffs are attempting to sue by naming the Superior Court as a Defendant.   To the extent that Plaintiffs are suing the Superior Court based on actions taken by the judges of the Superior Court, Defendant Superior Court must be dismissed for the reasons stated above.

To the extent Plaintiffs are trying to sue the Superior Court as an entity, the Eleventh Amendment bars suits against a state's agencies.   State entities are also entitled to immunity under the Eleventh Amendment.  Will, 491 U.S. at 70; Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997).   A California Superior Court is a state agency, and as such, claim against the California Superior Court is by the Eleventh Amendment.  See Franceschi v Schwartz, 57 F.3d 828, 831 (9th Cir 1995) (California municipal court is arm of state protected from lawsuit by 11th Amendment immunity); Greater Los Angeles Council on Deafness, Inc v Zolin, 812 F.2d 1103, 1110 n.10 (9th Cir. 1987) (11th Amendment bars suit against Superior Court of State of California regardless of relief sought).

Accordingly, the Madera County Superior Court must be dismissed without leave to amend.

**4.  United States**

The complaint names the United States as a defendant.    In  Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court created a remedy for violations of constitutional rights committed by federal officials acting in their individual capacities. See, e.g., Balser v. Department of Justice, Office of U.S. Trustee, 327 F.3d

903, 909 (9th Cir. 2003).  However, a Bivens suit is not available against the United States, only federal officials.  See Consejo de Desarrollo Economico de Mexicali, A.C. v. U.S., 482 F.3d 1157, 1173 (9th Cir. 2007); Arnsberg v. United States, 757 F.2d 971, 980 (9th Cir.1985).  Thus, Defendant United States will be dismissed without leave to amend.

**G.   Constitutional Rights of Others**

The complaint appears to allege violations of Jami's, Linda's, and Plaintiffs' children's constitutional rights.  In general, constitutional rights are personal in nature and cannot be asserted by another person.  L.A. Police Dep't v. United Reporting Publ'g Corp., 528 U.S. 32, 39 (1999); Johns v. County of San Diego, 114 F.3d 874, 876 (9th Cir.1997).  As such, Plaintiffs cannot obtain damages for Defendants' alleged violations of "Jami's" or "Linda's" constitutional rights.  In addition, Plaintiffs cannot obtain damages for Defendants' alleged violations of Plaintiffs' children's constitutional rights.  The complaint must be dismissed as to those claims that appear to allege violations of other people's constitutional rights.

**H. Fourteenth Amendment Violation - Loss of Familial Rights**

The complaint cites to the Fourteenth Amendment.   Plaintiffs may individually assert a Fourteenth Amendment claim based on the deprivation of their liberty interest arising out of their familial relationship with their children.  See Guess v. Byrd, 137 F.3d 1126, 1134 (9th Cir.1998). To prevail on a Fourteenth Amendment claim arising out of the loss of a familial relationship, a plaintiff must show that the defendants conduct shocks the conscience.    What state of mind shocks the conscience depends on the circumstances of a particular case.  See Moreland v. Las Vegas Metropolitan Police Dept., 159 F.3d 365, 372-73 (9th Cir. 1998).   Where law enforcement officers are forced to react to sudden situations with haste and under pressure without the opportunity to fully consider the potential consequences of their conduct, their conduct shocks the conscience only when it is motivated by a purpose to harm.  County of Sacramento v. Lewis, 523 U.S. 833, 852-53(1998);   Moreland, 159 F.3d at 372.   Under this standard, if an officer's instinct is to do his or her job as a law enforcement officer and not to terrorize, cause harm, or

13

kill, there is no substantive due process violation even if prudence should have repressed the officer's reaction. Lewis, 523 U.S. at 855.  There must be reason to believe that an officer's actions were tainted by an improper or malicious motive. Id.  However, if law enforcement is responding to a circumstance in which there is time to fully consider potential consequences, then conduct will shock the conscience if it is deliberately indifferent to the plaintiffs' rights. Moreland, 159 F.3d at 373; Byrd v. Guess, 137 F.3d 1126, 1133-34 (9th Cir. 1998) (superceded by statute on other grounds).  Deliberate indifference requires an officer to know of and disregard an excessive risk.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The complaint does not allege that Defendants' actions in interfering with Plaintiffs' relationship with their children shocked the conscience.  The complaint neither alleges that Defendants were motivated to harm Plaintiffs' relationship with their children nor that Defendants were deliberately indifferent to Plaintiffs' relationship with their children.  Thus, Plaintiffs' complaint must be dismissed as to Plaintiffs' Fourteenth Amendment claim.

**I.  Fourth Amendment**

The Fourth Amendment ordinarily prohibiting the warrant less entry of a person's house as unreasonable per se.  Payton v. New York, 445 U.S. 573, 586 (1980); Coolidge v. New Hampshire, 403 U.S. 443, 454-455 (1971).  However, the Fourth Amendment protects people not places.  Katz v. United States, 389 U.S. 347, 351 (1967); United States v. Shryock, 342 F.3d 948, 978 (9th Cir. 2003).  A person's capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection of the Fourth Amendment has a legitimate expectation of privacy in the invaded place.  Minnesota v. Carter, 525 U.S. 83, 88 (1998); Smith v. Maryland, 442 U.S. 735, 740 (1979); United States v. Gonzalez, 328 F.3d 543, 547 (9th Cir. 2003).  In general, an overnight guest has an expectation of privacy in a residence. Minnesota v. Olson, 495 U.S. 91, 96-97 (1990); United States v. Davis, 332 F.3d 1163, 1167 (9th Cir. 2003).  However, a person invited to another's home for a relatively short period of time generally has no legitimate expectation of privacy there.  Carter, 525 U.S. at 90-91; Nadell v. Las

Vegas Met. Police Dept., 268 F.3d 924, 928 (9th Cir. 2001).

In the complaint, Plaintiffs allege that a house, van, and purse were searched. In any amended complaint, Plaintiffs must allege how they believe they had an expectation of privacy in any of the places searched. Without an expectation of privacy in the place searched, Plaintiffs may not maintain a civil rights claim based on alleged violations of the Fourth Amendment rights. Accordingly, the Fourth Amendment claim is dismissed.

**J.  Fifth Amendment –  Malicious Prosecution**

The complaint alleges a violation of Plaintiffs' Fifth Amendment rights. It appears that Plaintiffs are attempting to allege a due process violation based on malicious prosecution. Malicious prosecution, by itself, does not constitute a due process violation; To prevail plaintiffs must show that the defendants prosecuted them with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right.   Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir.1985) (en banc). In order to succeed on a malicious prosecution claim under 42 U.S.C. § 1983, the plaintiff must show (1) tortious conduct under the elements of state law, and (2) intent to deprive the individual of a constitutional right. Poppell v. City of San Diego, 149 F.3d 951, 961 (9th Cir.1998). "In California, the elements of malicious prosecution are (a) the initiation of criminal prosecution, (b) malicious motivation, and (c) lack of probable cause."  Usher v. City of Los Angeles, 828 F.2d 556, 562 (9th Cir.1987); see also Singleton v. Perry, 45 Cal.2d 489, 289 P.2d 794, 798 (Cal. 1955).

Here, the complaint fails to allege a criminal prosecution was even initiated. The complaint also fails to allege that any Defendant initiated a criminal prosecution with the intent to deprive Plaintiffs of a constitutional right or did so with a malicious motive. Finally, the complaint does not allege any such criminal prosecution lacked probably cause.  Thus, the complaint fails to state a claim for malicious prosecution, and this claim must be dismissed.

**K.  Conspiracy**

The complaint alleges that Defendants acted pursuant to a conspiracy. To allege a

conspiracy claim under Section 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988). A plaintiff must allege that the defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).

Plaintiffs have not alleged facts even demonstrating that Defendants violated their constitutional rights. In addition, Plaintiffs have not alleged any facts supporting the existence of a conspiracy between Defendants. In order to state a cognizable claim for relief for conspiracy, Plaintiffs must establish that defendants conspired to violate an underlying constitutional right. Thus, any conspiracy claim under Section 1983 must be dismissed.

Title 42 U.S.C. § 1985 proscribes conspiracies to interfere with an individual's civil rights. To state a cause of action under Section 1985, a plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. Gillispie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); see also Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

Other than mentioning 42 U.S.C. § 1983, the complaint does not allege a racial or other class-based motive. The complaint does not allege any facts showing that Defendants conspired together. The mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985. Karim-Panahi, 839 F.2d at 626; Sanchez v. City of Santa Anna, 936 F.2d 1027, 1039 (9th Cir. 1991). Thus, any conspiracy claim under Section 1985 must be dismissed.

**L. RICO**

The complaint appears to allege a violation of RICO. Civil damages for RICO violations are provided by 18 U.S.C. § 1964(c). To state a civil RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or property.'" Ove v. Gwinn, 264 F.3d 817, 825 (9th Cir. 2001) (quoting 18 U.S.C. § 1964(c)). The complaint fails to allege sufficient facts to meet these elements.

To show an injury under RICO, the plaintiff must show a concrete financial loss and not mere injury to a valuable intangible property interest. Oscar v. University Students Coop. Ass'n, 965 F.2d 783, 785 (9th Cir.1992). "Personal injuries are not compensable under RICO. Ove v. Gwinn, 264 F.3d 817, 825 (9th Cir. 2001). The complaint fails to allege concrete damages.

A RICO claim must also allege an enterprise. Title 18 U.S.C. § 1961(4) defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." According to the Supreme Court, "establishing the existence of an associated-in-fact enterprise requires proof (1) of an ongoing organization, formal or informal, and (2) that the various associates function as a continuing unit." Chang v. Chen, 80 F.3d 1293, 1297 (9th Cir. 1996) (citing United States v. Turkette, 452 U.S. 576, 580 (1981)). The enterprise element requires the organization, formal or informal, to be an entity separate and apart from the pattern of racketeering activity in which it engages. Chang, 80 F.3d at 1298. The complaint does not allege any decision making structure for controlling and directing the affairs of the group on an on-going basis. The complaint fails to allege an enterprise beyond those necessary to commit the predicate acts of racketeering.

RICO violations under § 1962(c) also require a "pattern of racketeering activity." 28 U.S.C. § 1962(c). The RICO statute defines a "pattern of racketeering activity" to be "at least two acts of racketeering activity, one of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U .S.C. § 1961(5). Title 18 U.S.C. § 1961(1) defines what acts constitute "racketeering activity." The complaint

17

does not allege any of the specific acts listed in Section 1961(1) or that these acts occurred within ten years.

Accordingly, the complaint fails to state a RICO claim, and the RICO claim must be dismissed.

**ORDER**

Based on the above memorandum opinion, the court ORDERS that:

1. Defendants' motions to dismiss are GRANTED.
2. The complaint is DISMISSED with leave to amend.
3. Defendant Superior Court of Madera, Defendant Family Court of Madera, Defendant State of California, Defendant United States Government, and Defendant Judges are DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND.
4. All other Defendants are DISMISSED with leave to amend.
5. If Plaintiffs choose to amend the complaint, Plaintiffs must file an amended complaint within thirty days of this order's date of service.  Any amended complain must comply with Rule 8 and this order and may not name Defendant Superior Court of Madera, Defendant Family Court of Madera, Defendant State of California, Defendant United States Government, or Defendant Judges as Defendants.
6. Plaintiffs are FOREWARNED that failure to file an amended complaint will result in this action's dismissal.

IT IS SO ORDERED.

**Dated:     July 11, 2007**              /s/ Anthony W. Ishii
                                          UNITED STATES DISTRICT JUDGE