1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JAMES SANFORD POBURSKY and WANDA POBURSKY,** )<br><br>**Plaintiffs**, )<br>**v.** )<br><br>**MADERA COUNTY, et al.,** )<br><br>**Defendants.** )<br>)  | **1: 07 - CV - 0611 AWI DLB**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>**(Document #58)** |

This action stems from an incident in which Plaintiff James Pobursky and Plaintiff Wanda Pobursky ("Plaintiffs") were arrested and their children taken into Child Protective Services ("CPS")'s custody.   Plaintiffs allege violations of their constitutional rights and RICO. This court appears to have jurisdiction pursuant to 28 U.S.C. § 1331.   Because the events at issue occurred in this court's judicial district and division, venue is appropriate.

**BACKGROUND**

On April 23, 2007, Plaintiffs filed a complaint.   On July 12, 2007, the court dismissed the complaint with leave to amend.

On August 13, 2007, Plaintiffs filed an amended complaint.   The first cause of action alleges Defendants violated the Fourth Amendment by searching their "place and things" and arresting them without a warrant.   The second cause of action alleges Defendants violated Plaintiffs' rights under the Fifth Amendment and the Fourteenth Amendment to a familial relationship with their children.   The third cause of action alleges that Defendants violated the Fourteenth Amendment by subjecting them to cruel and unusual punishment.   Specifically, this cause of action alleges that Defendants subjected Plaintiffs to cruel and unusual conditions of

incarceration, failed to treat Plaintiffs' medical needs, and subjected them to harassment and demeaning statements.    The fourth cause of action alleges that Deputy Tallmon violated the Fourth Amendment and due process by stopping Plaintiffs' van On August 5, 2006, searching it, and having the family van towed.    The fifth cause of action alleges Defendants violated the Fifth Amendment and Fourteenth Amendment by maliciously prosecuting Plaintiffs.   The sixth cause of action appears to allege supervisory liability and/or municipal liability by  Defendant County of Madera and other entity defendants based on their failure to verify and insist that persons applying for offices or employment with them had sworn or affirmed to THE mandated oath of office and oath of allegiance.    There appears to be an unlabeled seventh cause of action for violations of RICO.    There appears to be an unlabeled eighth cause of action for conspiracy pursuant to 42 U.S.C. § 1985.

On September 19, 2007, Defendants filed a motion to dismiss the first amended complaint or for a more definite statement.    Defendants contend that Plaintiffs should not be allowed to add additional defendants because the court did not give Plaintiffs leave to add additional defendants.   Defendants contend that the redundant Defendants should be dismissed. Defendants contend that the complaint fails to state a claim against Defendant County of Madera. Defendants contend that Plaintiffs have failed to state a claim against many of the individual Defendants.   Defendants contend that Plaintiffs have failed to plead a malicious prosecution claim.    Defendants contend that Plaintiffs other due process claims should be dismissed. Defendants contend that the conspiracy and RICO claims should be dismissed without leave to amend.  Defendants contend the equal protection claims should be dismissed without leave to amend.

Plaintiffs did not file a timely opposition to Defendants' motion.   On October 18, 2007, the court took the motion under submission.    Plaintiffs then asked for an extension of time in which to file an opposition.    On October 30, 2007, the court granted Plaintiffs until November 5, 2007 to file any opposition.

1   On November 5, 2007, Plaintiffs filed a motion to amend the complaint.

2   On November 19, 2007, Defendants filed a reply to their motion in which Defendants

3   note that Plaintiffs did not file an opposition.

4   On November 28, 2007, Plaintiffs filed a reply to Defendants' reply, which appears to be

5   an untimely opposition to the motion to dismiss.

6   **LEGAL STANDARD**

7   A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil

8   Procedure if it appears beyond doubt that the plaintiff can prove no set of facts in support of the

9   claim that would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing

10  Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Balistreri v. Pacifica Police Department, 901 F.2d

11  696, 699 (9th Cir. 1990).  A Rule 12(b)(6) dismissal can be based on the failure to allege a

12  cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.

13  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984).  In considering a

14  motion to dismiss, the court must accept as true the allegations of the complaint in question,

15  Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in

16  the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's

17  favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).

18  Essentially, a motion to dismiss for failure to state a claim tests the plaintiff's compliance

19  with the liberal requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure.  See 5A

20  Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294-96.

21  Rule 8(a)(2) requires a complaint include "a short and plain statement of the claim showing that

22  the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2).  Rule 8(a)(2) requires sufficient

23  allegations to put defendants fairly on notice of the claims against them.  McKeever v. Block,

24  932 F.2d 795, 798 (9th Cir.1991);  Lynn v. Sheet Metal Workers' Intern. Ass'n,  804 F.2d 1472,

25  1482 (9th Cir. 1986).  "The liberal notice pleading of Rule 8(a) is the starting point of a simplified

26  pleading system, which was adopted to focus litigation on the merits of a claim."  Swierkiewicz

27

28  3

v. Sorema N. A., 534 U.S. 506, 514 (2002); see also Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1976 (2007) (quoting Swierkiewicz).   However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989).   "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

## ALLEGED FACTS

The amended complaint alleges that on July 7, 2006, at 6:31 p.m., Madera County Sheriff Sargent Karl Hancock and Deputy Brian Dee Cunnings approached Plaintiff James Pobursky ("Plaintiff James") in the front yard of a house near a parked van.   A short time later Deputy Jacob Tallmon, Deputy J. Adkins, and Deputy Chris Swanson arrived.

The amended complaint alleges that Sargent Hancock and Deputy Cunnings asked Plaintiff James if Jami Pobursky  ("Jami") was there because they had a warrant for her arrest. That amended complaint alleges that Plaintiff James told the deputies that this was not Jami's house or residence, the family was tired of being harassed, and the Sheriff had been told many times that Jami did not live there.   The amended complaint alleges that Sargent Hancock then got angry and stated that if they found Jami in the house, Plaintiff James would be arrested for aiding and abetting.

The amended complaint alleges that Deputy Cunnings then saw Plaintiff James's eight year-old daughter, Shawni, who suffers from a disability, standing in the front seat of a parked van.   The amended complaint alleges that Deputy Cunnings approached the van and opened the door, creating a hazzard for Shawni.   The complaint alleges that upon seeing that his daughter was about to fall, Plaintiff James reached over to stabilize her, without touching the deputy, who was facing his daughter.   The complaint alleges that Deputy Cunnings then turned around and shoved Plaintiff James back, causing Plaintiff James to fall.   The complaint alleges that Deputy Cunnings then put handcuffs on Plaintiff James, handcuffing him so tightly that his right middle

finger and hand became numb.    The amended complaint alleges that Deputy Cunnings  told Plaintiff James that he was under arrest for assaulting an officer.  The amended complaint alleges that Plaintiff James told the officer that the officer knew he was only trying to stabilize his disabled daughter from falling out of the van.

The amended complaint alleges that Plaintiff James was then placed in the back seat of the Sheriff's truck in 80-90 degree heat for five hours.   The amended complaint alleges that Plaintiff James's clothing was caught in the truck's door, and he began banging on the door to free his leg.   The amended complaint alleges that Deputy Tallmon approached the truck and unprofessionally stated to Plaintiff James: "If you don't stop banging on the car, I will kick your fucking ass."

The amended complaint alleges that Deputy Cunnings and Sergeant Hancock, without possessing a valid warrant, entered the van and searched it.   This search included Plaintiff James' briefcase and Bible located in the van.

The amended complaint alleges that the deputies were chain smoking, dropped cigarette butts in the flower bed, and blew smoke in Shawni's face.

The amended complaint alleges that Sergeant Hancock went into the duplex adjoining Plaintiffs' place through an unlocked screen door.   The amended complaint alleges that Sergeant Hancock searched Linda Bye's purse, and found the keys to Plaintiffs' place even though they were in the bottom of the purse.   The amended complaint alleges that Sergeant Hancock falsely stated that the keys were lying out.    The complaint alleges that Sergeant Hancock, Deputy Cunnings, Jacob Tallmon, J. Adkins, and Chris Swanson went into Plaintiffs' place without a warrant with one or more guns drawn.

The amended complaint alleges that the deputies told Plaintiff Wanda Pobursky ("Plaintiff Wanda") that if she did not identify herself, they would trash her house.   The amended complaint alleges that when Plaintiff Wanda remained silent, the deputies went and dumped Plaintiff Wanda's purse and other drawer contents out on the bed.   The amended

complaint alleges that Plaintiff Wanda was arrested for obstructing and delaying a police officer. The amended complaint alleges that Plaintiff Wanda was nursing her baby, and asked to be able to take the baby with her.   The amended complaint alleges that the baby was taken away from Plaintiff Wanda.

The amended complaint alleges that County of Madera CPS was called to take custody of the children.   The amended complaint alleges that Linda, the owner of the duplex, told the deputies that she would take the children, but she was refused.   The oldest daughter, Christian, was also present and was old enough to take the children.   The amended complaint alleges that while CPS was still there, Geri Pobursky, Plaintiff James's sister-in-law, called and begged Lynn Annete Hunt, a CPS social worker, to be able to take the children.   This request was refused.

The amended complaint alleges that at one time a deputy stated: "Those fucking kids won't even talk.   They'll break once we get them separated."   The amended complaint alleges that Deputy Hancock jerked Elisah's arm so hard that it felt like it was being pulled out of it's socket.   The amended complaint alleges that Lynn Annete Hunt transported some of the children without being seat belted.   The amended  complaint alleges that once taken away, the children's religious diet was not respected and they were shown R rated movies.

The amended complaint alleges that Plaintiffs were told later that they were being charged with child abandonment and neglect because they refused to identify themselves. The amended complaint alleges that Plaintiff Wanda was not told what she was charged with at the time.   The amended complaint alleges Plaintiff James was only advised of a charge of assault on an officer and not a charge of obstructing and delaying an officer.   The amended complaint alleges that Plaintiffs were never shown a  warrant. The amended complaint alleges Plaintiffs were never Mirandized.   The complaint alleges that during transportation to the jail, Plaintiff James was not seat belted and the deputy drove erratically and over the speed limit.

The amended complaint alleges that at the jail, Plaintiffs elected to exercise their Fifth Amendment right to remain silent.   Plaintiffs allege that the watch commander, Sergeant Davis,

stated:  "I don't care about these people.   I can make it pretty uncomfortable for them."  The amended complaint alleges that  Plaintiff James was not fed and kept in a bathroom/ dressing room all night.   The amended complaint alleges that Plaintiff Wanda was put in a cell without a bench and was forced to sit on a cold filthy floor all night.   The amended complaint alleges that the next day, when Plaintiff Wanda asked for a breast pump because she was a nursing mother, two County of Madera jail nurses talked down to her as though it was all her fault because she would not identify herself and would not help her.     The amended complaint alleges that Sergeant Ackerman told Plaintiff Wanda to relieve herself in the sink.

The amended complaint alleges that on July 15, 2006, Deputy Cunnings stopped Plaintiffs' van without probable cause.   The amended complaint alleges that Deputy Cunnings stated he was "just looking for her," opened the vans doors, and searched the van unlawfully.

The amended complaint alleges that on August 5, 2006, Deputy Tallmon stopped Plaintiff James on a country road.   The amended complaint alleges the van was unlawfully impounded.

The amended complaint alleges that on July 9, 2006, Lieutenant J. Bernardi approved a false and misleading Sheriff's report.    The amended complaint alleges that on February 5, 2007, Deputy R. Norton denied Plaintiff James a copy of the Sheriff's Incident Report of the July 7, 2006 incident.

The amended complaint alleges that Ernest Joseph Licalsi, D.A., indicated that he wanted the state court to proceed in order to stave off any potential lawsuit by Plaintiff James.    The amended complaint alleges that D.A. Licalsi refused to file any complaints by Plaintiffs regarding criminal actions by law enforcement officers.

The amended complaint alleges that D.A. Regina Bardshaw continued the prosecution despite the admonition of the judge that the officers testifying were disingenuous.    The amended complaint alleges the officers committed perjury.

//

7

**DISCUSSION**

**A.  Constitutional Claims and Linkage**

Defendants contend that Defendant Sheriff John Anderson, Defendant Deputy Warren Anderson, Defendant Deputy Brian Bangerter, Defendant Jennifer Blackburn, Defendant Cliff Kemper, Defendant Shawn P.K. Huston, Defendant Ed Gill, Defendant M. Todd Spangler, and Defendant Karen Mitchell are entitled to dismissal because these Defendants have not been linked to the alleged constitutional violations.    In the court's order dismissing the original complaint, the court already informed Plaintiffs of the need to link all named Defendants with some affirmative act or omission.

The Civil Rights Act allows suits against state actors for actions taken under state law that violate the Constitution, and reads in part:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.   Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v.  Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Defendant Deputy Warren Anderson, Defendant Deputy Brian Bangerter, Defendant Jennifer Blackburn, Defendant Cliff Kemper, Defendant Shawn P.K. Huston, Defendant Ed Gill, Defendant M. Todd Spangler, and Defendant Karen Mitchell are discussed in paragraphs 65, 66, and 68.   These paragraphs are under Plaintiff's fifth cause of action for malicious prosecution.

8

1   While the amended complaint alleges malicious prosecution, the amended complaint is

2   completely unclear as to what Defendant Sheriff John Anderson, Defendant Deputy Warren

3   Anderson, Defendant Deputy Brian Bangerter, Defendant Jennifer Blackburn, Defendant Cliff

4   Kemper, Defendant Shawn P.K. Huston, Defendant Ed Gill, Defendant M. Todd Spangler, and

5   Defendant Karen Mitchell specifically did that resulted in malicious prosecution.

6         Paragraphs 77 and 90 list all of the named Defendants, including Defendant Deputy

7   Warren Anderson, Defendant Deputy Brian Bangerter, Defendant Jennifer Blackburn, Defendant

8   Cliff Kemper, Defendant Shawn P.K. Huston, Defendant Ed Gill, Defendant M. Todd Spangler,

9   and Defendant Karen Mitchell.    While not completely clear, these paragraphs appear to be

10  alleging a conspiracy claim under 42 U.S.C. § 1983.   It appears,  the amended complaint alleges

11  that the liability of Defendant Deputy Warren Anderson, Defendant Deputy Brian Bangerter,

12  Defendant Jennifer Blackburn, Defendant Cliff Kemper, Defendant Shawn P.K. Huston,

13  Defendant Ed Gill, Defendant M. Todd Spangler, and Defendant Karen Mitchell is premised on

14  their membership in a conspiracy.

15        A conspiracy claim brought under section 1983 requires proof of "'an agreement or

16  meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th

17  Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-

18  41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v.

19  Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma,

20  866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not

21  know the exact details of the plan, but each participant must at least share the common objective

22  of the conspiracy.'"  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

23        The federal system is one of notice pleading, and the court may not apply a heightened

24  pleading standard to plaintiff's allegations of conspiracy.  Empress LLC v. City and County of

25  San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d

26  1119, 1126 (2002).  However, although accepted as true, the "[f]actual allegations must be

27

28                                              9

1  [sufficient] to raise a right to relief above the speculative level . . . ." <u>Bell Atlantic Corp. v.</u>

2  <u>Twombly</u>, 127 S.Ct. 1955, 1965 (2007) (citations omitted).  A plaintiff must set forth "the

3  grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a

4  formulaic recitation of the elements of a cause of action . . . ." <u>Id</u>. at 1964-65 (internal quotations

5  and citations omitted).  As such, the complaint's bare allegations that these defendants were part

6  of a conspiracy to violate Plaintiffs' constitutional rights is insufficient to allege a conspiracy

7  claim under section 1983.   Thus, Defendant Deputy Warren Anderson, Defendant Deputy Brian

8  Bangerter, Defendant Jennifer Blackburn, Defendant Cliff Kemper, Defendant Shawn P.K.

9  Huston, Defendant Ed Gill, Defendant M. Todd Spangler, and Defendant Karen Mitchell will be

10  dismissed.

11  **B.  Second Cause of Action - Fourteenth Amendment Loss of Familial Rights**

12          The second cause of action alleges that Plaintiffs' Fifth and Fourteenth Amendment rights

13  were violated when Defendants deprived Plaintiffs of their familial relationship with their

14  children.  Defendants contend this claim is subject to dismissal because Plaintiffs have failed to

15  sate a claim for a loss of familial rights claims.

16          A plaintiff may individually assert a Fourteenth Amendment claim based on the

17  deprivation of their liberty interest arising out of their familial relationship with their children.

18  <u>See</u> <u>Guess v. Byrd</u>, 137 F.3d 1126, 1134 (9th Cir.1998).   Parents have a constitutionally protected

19  liberty interest in the care and custody of their children.  <u>Santosky v. Kramer</u>, 455 U.S. 745, 753

20  (1982).  The Ninth Circuit has generally characterized the right to familial association as a

21  liberty right under the Due Process Clause.  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 685-86

22  (9th Cir. 2001);  <u>Kelson v. City of Springfield</u>, 767 F.2d 651, 655 (9th Cir.1985); <u>Estate of Imrie v.</u>

23  <u>Golden Gate Bridge Highway and Transp. Dist.</u>,  282 F.Supp.2d 1145, 1150 n.4 (N.D.Cal. 2003).

24  Application of the "deliberate indifference" standard to Fourteenth Amendment familial

25  association claims was reaffirmed by the Ninth Circuit in <u>Lee v. City of Los Angeles</u>, 250 F.3d

26  668 (2001).   In <u>Lee</u> the Ninth Circuit reversed the trial judge's dismissal of the plaintiffs' claims,

27

28                                                      10

finding that the plaintiffs had stated a cause of action by alleging "reckless, intentional and deliberate acts and omissions of defendants," constituting an "unwarranted interference" with the rights of family members. Id. at 685-86.[1]  Deliberate indifference requires an officer to know of and disregard an excessive risk. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The amended complaint alleges that Defendants' children were taken into CPS's custody. The amended complaint alleges that Defendants conspired to take Plaintiffs' children away even though there were two adults and an older sibling who could have watched the children.   While the amended complaint states in a conclusory fashion that Defendants' conduct shocked the conscience, all Plaintiffs have alleged is that Defendants choose to take the children into custody instead of leaving them with the people Plaintiffs would have preferred them to have been left with.   The amended complaint does not allege the these other people were known to CPS or that CPS had time to ensure they would be appropriate guardians.  The amended complaint neither alleges that Defendants were motivated to harm Plaintiffs' relationship with their children nor that Defendants were deliberately indifferent to Plaintiffs' relationship with their children.   The mere act of requiring the children to stay in CPS custody for a short period of time when Plaintiffs had other people they would have preferred the children to stay with is insufficient to raise to the level of deliberate indifference.   Defendants were not deliberately indifferent by failing to leave children, whose parents had been arrested, with the parents' stated choice of a temporary guardian.   Thus, Plaintiffs' amended complaint must be dismissed as to Plaintiffs' second cause of action.

---

[1]   Where law enforcement officers are forced to react to sudden situations with haste and under pressure without the opportunity to fully consider their acts, the Fourteenth Amendment is only implicated if the officers were motivated by a purpose to harm. County of Sacramento v. Lewis, 523 U.S. 833, 852-53(1998). Under this standard, if an officer's instinct is to do his or her job as a law enforcement officer and not to terrorize, cause harm, or kill, there is no substantive due process violation even if prudence should have repressed the officer's reaction. Lewis, 523 U.S. at 855.   There must be reason to believe that an officer's actions were tainted by an improper or malicious motive. Id. However, if law enforcement is responding to a circumstance in which there is time to fully consider potential consequences, such as in this action, then conduct will shock the conscience if it is deliberately indifferent to the plaintiffs' rights. Byrd v. Guess, 137 F.3d 1126, 1133-34 (9th Cir. 1998) (superceded by statute on other grounds).

**C.  Third Cause of Action - Conditions in Jail**

The complaint identifies several Defendants related to Plaintiffs' detention in the Madera County Jail.   Defendants contend that the amended complaint fails to state a constitutional violation concerning the jail conditions.

The Eighth Amendment's prohibition against cruel and unusual punishment only protects convicted prisoners.  Bell v. Wolfish, 441 U.S. 520, 535 (1979); Graham v. Connor, 490 U.S. 386, 395 n.10 (1989).  It is the Due Process Clause of the Fourteenth Amendment that protects pre-trial detainees from the use of excessive force.  Redman v. County of San Diego, 942 F.2d 1435, 1440 (9th Cir. 1991) (quoting Graham v. Connor at 395 n.10).   Pretrial detainees have the right to be free from punishment.   Bell v. Wolfish, 441 U.S. 520, 535 (1979).   While this right is located in the Due Process Clause, courts borrow from Eighth Amendment principles in determining the care to be afforded pretrial detainees.   Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir.1996); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986); Collins v. County of Kern, 390 F.Supp.2d 964, 973 (E.D.Cal. 2005).   As such, pretrial detainees are entitled to adequate food, clothing, shelter, sanitation, medical care, and personal safety. Alvarez-Machain, 107 F.3d at 701

***1.  Failure to Treat Plaintiff Wanda's Medical Condition***

The amended complaint alleges that Plaintiff Wanda was a nursing mother.   The amended complaint alleges that two jail nurses, which have been named as doe defendants, and Sergeant Ackerman denied her request for a breast pump.   The amended complaint alleges that Sergeant Ackerman told Plaintiff Wanda she could relieve herself in a sink.   The amended complaint alleges that Plaintiff Wanda was extremely uncomfortable and had engorged breasts.

Claims of failure to provide care for serious medical needs, when brought by a detainee who has been neither charged nor convicted of a crime, are analyzed under the substantive due process clause of the Fourteenth Amendment.   Lolli v. County of Orange,  351 F.3d 410, 418-19 (9th Cir. 2003);  Gibson v. County of Washoe, 290 F.3d 1175, 1185-86 (9th Cir. 2002.)   To state a

claim for a constitutional violation regarding medical care, a plaintiff must allege that he or she

was (1) confined under conditions posing a risk of 'objectively, sufficiently serious harm and (2)

that the officials had a sufficiently culpable state of mind in denying the proper medical care

support that he had a serious medical need and that a defendant acted with deliberate indifference

to that need. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (describing standard for

convicted inmates); Lolli, 351 F.3d at 418-19 (describing standard for pretrial detainees).

Deliberate indifference may occur if "prison officials deny, delay or intentionally interfere with

medical treatment."   Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation

marks omitted).

> In order to know of the risk, it is not enough that the person merely 'be aware of
> facts from which the inference could be drawn that a substantial risk of serious
> harm exists,  he must also draw that inference. But if a person is aware of a
> substantial risk of serious harm, a person may be liable for neglecting a prisoner's
> serious medical needs on the basis of either his action or his inaction.

Lolli, 351 F.3d at 419 (alterations in original); Gibson, 290 F.3d at 1187.  A delay in receiving

medical care, without more, is insufficient to state a claim against jailors for deliberate

indifference unless the plaintiff can show that the delay in treatment harmed her. Shapley v.

Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985).

The complaint's allegations concerning the Doe Defendant Nurses and Sergeant

Ackerman are sufficient to state a claim.   The amended complaint alleges that these Defendants

were told Plaintiff Wanda was a breast feeding mother and Plaintiff Wanda asked for a breast

pump.   Because the amended complaint's allegations are consistent with an allegation that Doe

Defendant Nurses and Sergeant Ackerman knew Plaintiff Wanda needed a breast pump and

knew that denying her a pump for a significant period of time caused her pain, the amended

complaint adequately states a Fourteenth Amendment claim concerning the denial of a breast

pump to Plaintiff Wanda.   In making this finding, the court does not find that Plaintiff Wanda's

Fourteenth Amendment rights were violated.   Rather, the court finds that it is not clear that no

relief could be granted under any set of facts that could be proved consistent with the allegations

1  concerning the denial of medial care for Plaintiff Wanda.  Swierkiewicz, 534 U.S. at 512.[2]

2  ## 2.  Failure to Treat Plaintiff James' Medical Condition

3        The amended complaint alleges that a Doe Defendant and Correctional Officer Lara

4  denied Plaintiff James of necessary medical care for his right hand and right middle finger.

5  Defendants' request to dismiss this claim will be granted.   First, Officer Lara is not named as a

6  defendant in this action.   Second, even taking the complaint's allegations as true, the amended

7  complaint does not allege that the Doe Defendant and Officer Lara **knew** there was a serious risk

8  to Plaintiff James' health by not treating Plaintiff James's right hand and middle finger.   In fact,

9  the amended complaint does not even allege that these officers knew Plaintiff James had been

10  injured.   Plaintiff James' allegations differ from those of Plaintiff Wanda because Plaintiff

11  Wanda alleges she asked for a breast pump whereas Plaintiff James makes no allegations that he

12  asked for medical aid.   Thus, the amended complaint fails to state a Fourteenth Amendment

13  claim concerning the denial of medical treatment to Plaintiff James.

14  ## 3.  Conditions of Confinement

15        The amended complaint alleges that Sergeant Davis kept Plaintiff James in a cold

16  dressing room/bathroom all night without a blanket, despite Plaintiff James' requests.   The

17  amended complaint alleges that Sergeant Davis placed Plaintiff Wanda in a special cell that had

18  no bench.   The amended complaint alleges that Plaintiff Wanda was forced to sit on the floor all

19  night without any shoes, coat, or blanket.   The amended complaint also alleges that Plaintiff

20  Wanda's cell was constantly observed through a window.

21        Prison officials have a duty to ensure that prisoners are provided adequate shelter, food,

22  clothing, sanitation, medical care, and personal safety.  Rhodes v. Chapman, 452 U.S. 337, 348

23  (1981); Johnson v. Lewis, 217 F.3d 726, 731 (9th  Cir. 2000).   "The circumstances, nature, and

24  duration of a deprivation of  necessities must be considered in determining whether a

25  

26        [2] Once additional details are ascertained about this claim, it may become apparent that
    Plaintiff Wanda's medical need was not serious and/or Defendants did not have sufficient
27  knowledge to be deliberately indifferent.

28                                    14

1   constitutional violation has occurred.  Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005)

2   (quoting Johnson, 217 F.3d at 731).  "The more basic the need, the shorter the time it can be

3   withheld."  Johnson,  217 F.3d at 731.

4   _____The Eighth Amendment requires neither that prisons be comfortable nor that they provide

5   every amenity that one might find desirable. Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th  Cir.

6   1982), *on appeal after remand*, Hoptowit v. Spellman, 753 F.2d 779 (9th Cir. 1985).  Pre-trial

7   detainees are entitled to clean clothing, a mattress, and bedding on a regular basis.  Thompson v.

8   City of Los Angeles, 885 F.2d 1439, 1448 (9th Cir. 1989); Jones v. Neven, 2007 WL 3232522, *4

9   (D.Nev.,2007);  Zin v. Chief Medical Officer, 1994 WL 224841, *5 (N.D.Cal.1994);  Toussaint

10  v. Rushen, 553 F.Supp. 1365, 1379 (N.D.Cal.1983).   However, being forced to sleep without a

11  mattress for only one night is insufficient to state an Eighth Amendment violation.  Hernandez v.

12  Denton, 861 F.2d 1421, 1424 (9th Cir. 1988), *judgment vacated on other grounds*, 493 U.S. 801

13  (1989).   Adequate food is also a basic Eighth Amendment requirement.   Zin v. Chief Medical

14  Officer, 1994 WL 224841, *5 (N.D.Cal.1994); Toussaint v. McCarthy, 597 F.Supp. 1388, 1412

15  (N.D.Cal.1984).  But, deprivation of a single meal does not constitute an injury serious enough to

16  support an Eighth Amendment claim.  See, e.g., Hernandez, 861 F.2d at 1424 (holding that

17  allegation that inmate slept without a mattress for one night is insufficient to state an Eighth

18  Amendment violation).  The denial of adequate clothing may, under certain circumstances, rise to

19  the level of an Eighth Amendment violation.  Walker v. Sumner, 14 F.3d 1415, 1421 (9th Cir.

20  1994).  The Ninth Circuit has found that requiring inmates to live under conditions that include

21  unsatisfactory plumbing, inadequate ventilation and vermin infestation violate the Constitution.

22  Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir.1985).   However, claims that a facilities'

23  cleaning standards do not match the plaintiff's standards are insufficient to support a finding that

24  he is living in squalor.  Brotten v. State of Cal., 1994 WL 173916, *2  (N.D.Cal.1994).

25          Here, Plaintiffs have alleged, at most, the deprivation of adequate bedding for one night.

26  Plaintiff James has also alleged the deprivation of one meal.   The circumstances and duration of

27

28                                                    15

Plaintiffs' confinement weighs against finding a constitutional violation even taking all of the

amended complaint's allegations as true.   Because of the short length of the Plaintiffs' detention,

the conditions they were subjected to do not rise to the level of a Constitutional violation.

Pursuant to <u>Hernandez v. Denton</u>, 861 F.2d 1421 (9th Cir. 1988), the failure to provide adequate

bedding, clothes, and food for what appears to have been one night in jail, which lasted through

one meal, is insufficient to state a constitutional violation. <u>See</u> <u>Hernandez</u>, 861 F.2d at 1424 (9th

Cir. 1988), *judgment vacated on other grounds*, 493 U.S. 801 (1989).   Thus, Plaintiffs'

condition of confinement claims are subject to dismissal.

### *4.  Verbal Statements*

The amended complaint also alleges that various jail personal spoke to Plaintiffs in a

demeaning manor.   This claim fails because verbal harassment does not violate the Eighth

Amendment.  <u>See</u>  <u>Austin v. Terhune</u>, 367 F.3d 1167, 1171 (9th Cir. 2004);  <u>Keenan v. Hall</u>, 83

F.3d 1083, 1092 (9th Cir. 1996).   Thus, the complaint's claims concerning verbal harassment at

the jail must be dismissed.

### D.  Fifth Cause of Action –  Malicious Prosecution

The amended complaint alleges that Defendants committed malicious prosecution in

violation of the Fifth Amendment and Fourteenth Amendment.   Defendants move to dismiss this

claim because the amended complaint fails to adequately plead a malicious prosecution claim.

A malicious prosecution claim requires the plaintiff to prove that the defendant

prosecuted him or her with malice and without probable cause, and that the defendant did so for

the purpose of denying the plaintiff equal protection or another specific constitutional right.

<u>Bretz v. Kelman</u>, 773 F.2d 1026, 1031 (9th Cir.1985) (en banc). In order to succeed on a

malicious prosecution claim under 42 U.S.C. § 1983, the plaintiff must show (1) tortious conduct

under the elements of state law, and (2) intent to deprive the individual of a constitutional right.

<u>Poppell v. City of San Diego</u>, 149 F.3d 951, 961 (9th Cir.1998). "In California, the elements of

malicious prosecution are (a) the initiation of criminal prosecution, (b) malicious motivation, and

(c) lack of probable cause." <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 562 (9th Cir.1987); <u>see also</u> <u>Singleton v. Perry</u>, 45 Cal.2d 489, 289 P.2d 794, 798 (Cal. 1955).

The amended complaint alleges that the Defendants committed malicious prosecution by filing a criminal complaint.   The amended complaint alleges that D.A. Licalsi indicated the state court case would proceed in order to stave off any potential law suit by Plaintiff James.   The amended complaint alleges that Deputy D.A. Bradshaw continued the prosecution despite an admonition from the judge that the officers were disingenuous.   The court agrees with Defendants that these allegations, read in connection with the rest of the amended complaint, are insufficient to allege a malicious prosecution claim under the Federal Constitution.   The amended complaint does not clearly allege that there was no probable cause to charge Plaintiffs. The amended complaint does not contain sufficient allegations to allege that Defendant initiated a criminal prosecution with the intent to deprive Plaintiffs of a constitutional right.   While the complaint does imply one motive in continuing with the state criminal complaint was an attempt to stop this federal lawsuit, this allegation in isolation is insufficient to show a malicious motive.   Thus, the amended complaint fails to state a claim for malicious prosecution, and this claim must be dismissed.

**E.  Sixth Cause of Action - Failure to Verify**

The sixth cause of action alleges that Defendant County of Madera and its entities failed, refused, or neglected to verify and insist that persons applying for offices or employment with them had sworn or affirmed the mandated oath of office and oath of allegiance as mandated in the California Constitution and other California laws.   The amended complaint alleges that Defendant County of Madera and its entities had a duty to provide Plaintiffs with officers and employees who had sworn or affirmed the oath of office and oath of allegiance. The amended complaint states that this cause of action is brought pursuant to the Due Process Clause of the Fifth and Fourteen Amendments.   Plaintiffs have failed to adequately explain to this court how Defendants' failure to ensure officers and employees had sworn or affirmed an oath of office and

oath of allegiance violates the Fifth and Fourteen Amendments.   The court does not see how the

Fifth and Fourteenth Amendments protect Plaintiffs against having officers and employees who

have potentially violated a California state law.   Accordingly, the sixth cause of action will be

dismissed on its face.[3]

**F.  Liability of Defendant Madera County**

Defendants contend that the amended complaint does not state a claim against Defendant

Madera County.   The court previously found that the original complaint did not state a claim

against Defendant Madera County because the complaint did not allege that other defendants

acted pursuant to a policy or custom of Defendant Madera County.

Local governments can be subject to liability under 42 U.S.C. § 1983.   Monell v. Dep't

of Social Servs., 436 U.S. 658, 690 (1978).   However, a local government unit may not be held

responsible for the acts of its employees under a respondeat superior theory of liability.   Monell,

436 U.S. at 691; Fuller v. City of Oakland, 47 F.3d 1522, 1534 (9th Cir. 1995).   Rather, to state a

claim for municipal liability, a plaintiff must allege that he or she suffered a constitutional

deprivation that was the product of a policy or custom of the local government unit.   See City of

Canton, Ohio, v. Harris, 489 U.S. 378, 385 (1989).   Thus, prevail on their claims against the

County of Madera, Plaintiffs must show that: (1) There was a violation of Plaintiffs'

constitutional rights, and (2) The County of Madera's policy or custom caused the violation.   See

Monell, 436 U.S. at 690-92.

In this action, the amended complaint states at paragraph 80 that: "Regarding all Causes

of Action, Plaintiff's [sic.] have suffered the claimed constitutional deprivation that was the

product of a custom, usage, policy, and practice of Defendant COUNTY OF MADERA, in which

---

[3]  To the extent the sixth cause of action is merely attempting to establish one, among
many, policies and practices of Defendant County of Madera in order to establish municipal
liability over other causes of action, Plaintiffs may still be able to cite to the failure to ensure the
officers had sworn or affirmed the mandated oath of office and oath of allegiance.  Plaintiffs'
allegations concerning the oath of office and oath of allegiance do not provide an independent
basis of liability.

all identified Defendants, acted under the color of state law."   <u>See</u> Amended Complaint ¶ 80.

Defendants contend that this conclusory statement is insufficient to state a claim for municipal

liability under <u>Monell</u>.   "In this circuit, a claim of municipal liability under section 1983 is

sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a

bare allegation that the individual officers' conduct conformed to official policy, custom, or

practice." <u>Whitaker v. Garcetti</u>, 486 F.3d 572, 581 (9th Cir.  2007);  <u>Galbraith v. County of Santa</u>

<u>Clara</u>,  307 F.3d 1119, 1127 (9th Cir. 2002);  <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d

621, 624 (9th Cir. 1988); <u>Shah v. County of Los Angeles</u>, 797 F.2d 743, 747 (9th Cir. 1986).

Thus, Plaintiffs' bare allegation that the actions of individual defendants conformed to official

policy suffices to withstand this motion to dismiss.

Defendants also appear to argue that Plaintiffs' conclusory statement in paragraph 80

alleging that all claimed constitutional deprivations at issue were the product of a custom, usage,

policy, and practice of Defendant Madera County conflicts with paragraph 76.   Paragraph 76 is

under the heading "REGARDING ALL CAUSES OF ACTION".   Paragraph 76 reads:

> These complained of acts or omissions did not involve the formulation of
> any *official* policy, nor did they apply to the community at large.  They were
> simply personal in nature and not covered by any type of judicial, quasi-judicial,
> good faith, or qualified immunity against this personal injury action. . . .

<u>See</u> Amended Complaint ¶ 76.   While paragraph 76 is confusing and at first glance appears to

conflict with paragraph 80, paragraph 77 seems to clarify Plaintiffs' position.   Paragraph 77

alleges that Defendants "have met together and conspired to penetrate the above mentioned

action clearly related to their custom, usage, policy, and practice in dealing with the humans,

James Sanford, Pobursky and Wanda Pobursky . . . ."   Reading these paragraphs together, along

with the rest of the amended complaint, the court finds that Plaintiffs have not conceded that the

individuals' actions were not the result of Defendant Madera County's custom or policy.

Rather, Plaintiffs appear to be alleging that Defendant Madera County's custom and policy

regarding Plaintiffs was directed only at Plaintiffs and not other people.   Thus, the court finds

that the amended complaint sufficiently alleges that Defendant Madera County's custom and policy regarding Plaintiffs caused the constitutional violations at issue in this action.

**G.  Liability of Defendant Sheriff John Anderson and Supervisors**

The amended complaint names Sheriff John Anderson and other defendants who appear to be the supervisors' of the deputies listed in the first cause of action.   While not clear from the amended complaint, it appears that Plaintiffs are alleging Defendant Sheriff John Anderson and the supervisors are liable for the remaining causes of action because they supervised the other Defendants.   Defendants contend that the amended complaint fails to adequately allege supervisor liability.

Despite Plaintiffs' assertions to the contrary, there is no respondeat superior liability under Section 1983. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  To show a supervisor's liability, the plaintiff must show: (1) The supervisor's personal involvement in the constitutional deprivation, or (2) A sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.   Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001).   Supervisors can be held liable if they play an affirmative part in the alleged deprivation of constitutional rights by setting in motion a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict the constitutional injury.   Graves v. City of Coeur D'Alene, 339 F.3d 828, 848 (9th Cir.2003) (*citations omitted*) (quoting Rise v. Oregon, 59 F.3d 1556, 1563 (9th Cir.1995); Larez v. City of LA, 946 F.2d 630, 646 (9th Cir.1991)).   "Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." Menotti v. City of Seattle,  409 F.3d 1113, 1149 (9th Cir. 2005) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.1991)).

The amended complaint does not allege specifically how any of the supervisor defendants

were involved in the alleged constitutional violations.   While the amended complaint states in a

conclusory fashion that the supervisors set in motion a serious of acts by their deputies that they

knew or should have known would cause the deputies to inflict constitutional injury, this

allegation is too vague to state a claim based on supervisor liability.   The amended complaint

fails to state what Defendant Sheriff John Anderson or any other supervisor did to cause the

deputies to violate Plaintiffs' constitutional rights.   It is unclear if the deputies were acting

pursuant to Defendant Sheriff John Anderson's and/or the other supervisors' policy, order,

directions, or/and other actions.   There are insufficient allegations on how the supervisor

defendants caused the other defendants to commit constitutional violations.   Thus, the complaint

fails to allege a civil rights violation by Defendant Sheriff John Anderson and the other

supervisors defendants.   Defendant Sheriff John Anderson and the other supervisor defendants

are entitled to dismissal.

**H.  Conspiracy - Section 1983**

The amended complaint alleges that Defendants acted pursuant to a conspiracy.   To

allege a conspiracy claim under 42 U.S.C. § 1983, a complaint must "allege [some] facts to

support the existence of a conspiracy among the defendants."  Buckey v. County of Los Angeles,

968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d

621, 626 (9th Cir. 1988).  A plaintiff must allege that the defendants conspired or acted jointly in

concert and that some overt act was done in furtherance of the conspiracy.  Sykes v. State of

California, 497 F.2d 197, 200 (9th Cir. 1974).

As discussed above, the remaining Section 1983 claims in this action are found in the

first cause of action, alleging Fourth Amendment violations based on Deputy Cunnings, Sergeant

Hancock, Deputy Tallmon, Deputy Adkins, Deputy Swanson's search of Plaintiffs' house and

Plaintiffs' arrest.   This action will also continue based on Plaintiffs' third cause of action to the

extent Plaintiff Wanda alleges that Deputy Ackerman and two Doe Nurses fails to treat her

medical concerns.   Finally, this action will continue based on Plaintiffs' fourth cause of action,

which alleges Deputy Tallmon and Deputy Adkins violated Plaintiff James's Fourth Amendment rights by stopping Plaintiffs' van and searching it on August 5, 2006.    All other causes of action are being dismissed, along with the Defendants at issue in those causes of action.

As to Plaintiff's first cause of action, the court finds that the amended complaint sufficiently alleges a conspiracy by Deputy Cunnings, Sergeant Hancock, Deputy Tallmon, Deputy Adkins, Deputy Swanson and Defendant Madera County to violate Plaintiffs' Fourth Amendment rights. Plaintiffs have alleged facts that demonstrate these Defendants violated their constitutional rights.   The amended complaint alleges the existence of a conspiracy between these Defendants.  The amended complaint alleges that these Defendants took an act to further their conspiracy by unlawfully searching Plaintiffs' house and arresting Plaintiffs.   Thus, a conspiracy claim may proceed against these Defendants.

All other conspiracy claims are subject to dismissal.  The court finds that Plaintiffs' blanket assertion that all Defendants were part of a greater conspiracy to deprive Plaintiffs of their constitutional rights is an insufficient allegation.    In deciding a Rule 12(b)(6) motion, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981).  Rule 8's "liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989).   While accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted).  A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. at 1964-65 (internal quotations and citations omitted).  As such, a bare allegation that all Defendants conspired to violate Plaintiffs' constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.   Thus, Plaintiffs' conspiracy claim alleging all named Defendants were part of a broader

conspiracy must be dismissed.

**I.  Conspiracy - Section 1985**

Defendants seek to dismiss Plaintiffs' conspiracy claim that is based on title 42 U.S.C. § 1985.  Section 1985 proscribes conspiracies to interfere with an individual's civil rights.  To state a cause of action under Section 1985, a plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States.  Gillispie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); see also Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).   The plaintiff must also demonstrate a deprivation of a right motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002);  Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).  The "plaintiff must be a member of the class discriminated against."  RK Ventures, Inc., 307 F.3d at 1056.

The amended complaint alleges that Plaintiffs were discriminated against because of their status as "radical, Montana Freeman type, constitutionalist(s)."   Plaintiffs have not cited, and this court has been unable, any authority finding radical constitutionalists to be a class given special protection under the Constitution.   Thus, any conspiracy claim under Section 1985 must be dismissed.

**J.  Other Possible Constitutional Violations**

The amended complaint appears to state other potential constitutional violations.  Defendants have moved to dismiss claims that appear to be based on various allegations in the complaint.   While these facts are not used to support one of the specific seven causes of action discussed above, it is possible Plaintiffs are attempting to allege additional constitutional violations.   Thus, these allegations will be addressed.

*1.  Approving Report*

The complaint alleges that Lieutenant James Berardi approved a false and misleading Sheriff's report.   The amended complaint fails to adequately link Lieutenant Berardi to any constitutional violation.   There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).   A person is adequately linked when he or she "does an affirmative act, participates in another's affirmative acts or omits to perform an act which he [or she] is legally required to do that causes the deprivation of which complaint is made." Johnson, 588 F.2d at 743.   Here, the amended complaint does not allege that Lieutenant Berardi knew the report was false when he approved it.   In addition, the amended complaint does not state how Lieutenant Berardi's approving of the report caused a deprivation of Plaintiffs' constitutional rights.   Plaintiffs have not cited to, and this court is unaware of, a free standing constitutional right to have police reports be accurate.   Thus, Lieutenant Bernardi is entitled to dismissal.

*2.  Denial of Physical Injury Claim*

The amended complaint alleges that Judson Gross from the Risk Management Division denied Plaintiff James's physical injury claim to the county.   Plaintiffs have not stated the constitutional basis of this claim.   Plaintiffs do not have a right protected by the Constitution to have administrative claims they file against Madera County properly resolved.   Thus, Judson Gross is entitled to dismissal.

*3.   Coerced Statements*

The amended complaint alleges that some of the conditions Plaintiffs were subjected to were a result of Defendants attempting to obtain unlawful statements from Plaintiffs. Defendants seek to dismiss any claims based on alleged coerced statements.

The Supreme Court in Chavez v. Martinez, 538 U.S. 760 (2003), addressed the issue of whether a civil rights plaintiff could proceed with a civil rights claim alleging a violation of the

Fifth Amendment where the police had compelled statements from the plaintiff during

interrogation but those statements were never used by the police or prosecutors because the

plaintiff was never charged with a crime.   The Supreme Court concluded that an officer could not

be subjected to civil liability for an alleged violation of the privilege against compelled

self-incrimination where the coerced statement was not used.   Justice Thomas, joined by the

Chief Justice and two other Justices, reasoned that "mere coercion does not violate the text of the

Self-Incrimination Clause absent use of the compelled statements in a criminal case against the

witness." Id. at 769 (Thomas, J.).   While the privilege may be invoked in any proceeding, a

violation of the constitutional right "occurs only if one has been compelled to be a witness

against himself in a criminal case" or when a defendant is placed under oath and exposed to "the

cruel trilemma of self-accusation, perjury or contempt." Id. at 767, 770 (Thomas, J.)(internal

quotes omitted).   This same plurality also explained that although the Supreme Court has

"permitted the Fifth Amendment's self-incrimination privilege to be asserted in noncriminal

cases, that does not alter our conclusion that a violation of the constitutional right against

self-incrimination occurs only if one has been compelled to be a witness against himself in a

criminal case." Id. at 770 (Thomas, J.) (internal citations and quotations omitted).   While

agreeing that the plaintiff was not entitled to pursue a damages claim for violation of his Fifth

Amendment rights, Justice Souter, joined by Justice Breyer, approached the issue before the

Supreme Court from a policy perspective and concluded that no civil rights claim was available

because the plaintiff could not "make the 'powerful showing, subject to a realistic assessment of

costs and risks, necessary to expand protection of the privilege against compelled

self-incrimination to the point of the civil liability he asks us to recognize here." Id. at 778

(Souter, J., concurring in the judgment)

Here, at most, Plaintiffs have alleged that Defendants attempted to coerce statements

from Plaintiffs.   After Chavez, it is clear that the mere act of attempting to coerce a confession is

not a Fifth Amendment violation upon which a Section 1983 claim may be predicated.   A

25

1  plaintiff may not base a section 1983 claim on the mere fact that the police used coercive

2  questioning tactics when statements that allegedly violate the Self Incrimination Clause are not

3  used against him or her in a criminal proceeding.  Sornberger v. City of Knoxville, Ill., 434 F.3d

4  1006, 1023-24 (7th Cir. 2006);  McKinley v. City of Mansfield, 404 F.3d 418, 430 (6th Cir. 2005);

5  Renda v. King, 347 F.3d 550, 552 (3rd Cir. 2003).   Because the amended complaint alleges that

6  Plaintiffs did not make any statements, and as such, no statements have been used against them

7  in criminal proceedings, any claim based on alleged coercive statements must be dismissed.

8  *4.  Duplicative Substantive Due Process Claims*

9       Defendants seek to dismiss substantive due process claims to the extent they seek relief

10  for alleged improper actions covered by another constitutional amendment.    Substantive due

11  process cannot supply the basis for a civil rights claim if the challenged governmental conduct is

12  prohibited by another, more specific, constitutional right.  Graham v. Connor, 490 U.S. 386,

13  394-95 (1989).   The Fourth Amendment adequately protects Plaintiffs from the allegations in the

14  first cause of action, which include allegations of an unlawful search of Plaintiff's house and

15  Plaintiffs' false arrest.   The Fourth Amendment also adequately protections Plaintiffs from the

16  allegations in the fourth cause of action, which alleges Defendants violated the Fourth

17  Amendment by searching Plaintiffs' van and impounding it on August 5, 2006.   Thus, to the

18  extent the first caused of action and fourth cause of action are based on substantive due process,

19  these claims must be dismissed.   These causes of action will proceed on the basis of the Fourth

20  Amendment.

21  **K.  RICO CAUSE OF ACTION**

22       While not listed as a specific cause of action, the amended complaint's language tracks

23  language used in RICO actions.   Civil damages for RICO violations are provided by 18 U.S.C. §

24  1964(c).  To state a civil RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3)

25  through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or

26  property.'"   Ove v. Gwinn, 264 F.3d 817, 825 (9th Cir. 2001) (quoting 18 U.S.C. § 1964(c)).

27

28                                         26

The conclusory statements in the amended complaint fail to allege sufficient facts to meet these elements.

To show an injury under RICO, the plaintiff must show a concrete financial loss and not mere injury to a valuable intangible property interest. Oscar v. University Students Coop. Ass'n, 965 F.2d 783, 785 (9th Cir.1992).  "Personal injuries are not compensable under RICO.  Ove v. Gwinn, 264 F.3d 817, 825 (9th Cir. 2001).  The amended complaint fails to allege concrete damages.  The amended complaint concerns Plaintiffs' damages arising from alleging Fourth Amendment violations and alleged unconstitutional conditions of confinement.  While compensation may be available based on the facts of the complaint in a civil rights action, such personal injuries are not damages for which RICO is available.

A RICO claim must also allege an enterprise.  Title 18 U.S.C. § 1961(4) defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  According to the Supreme Court, "establishing the existence of an associated-in-fact enterprise requires proof (1) of an ongoing organization, formal or informal, and (2) that the various associates function as a continuing unit."  Chang v. Chen, 80 F.3d 1293, 1297 (9th Cir. 1996) (citing United States v. Turkette, 452 U.S. 576, 580 (1981)).  The enterprise element requires the organization, formal or informal, to be an entity separate and apart from the pattern of racketeering activity in which it engages.  Chang, 80 F.3d at 1298.  The complaint does not provide any details on a decision making structure for controlling and directing the affairs of the RICO enterprise on an on-going basis.  The amended complaint's conclusory allegations regarding the presence of an enterprise are insufficient.  The amended complaint's RICO allegations do not go beyond those necessary to commit the predicate acts of racketeering.  Thus, no RICO claim is available.

**L.  New Defendants**

In the amended complaint, Plaintiffs have added several new defendants, including Reta Norton, Melisssa Norton, A. Hernandez, Ed Gill, M. Todd Spangler, Karen Mitchell, John K.

27

Johnson, Dennis Orander, Elizabeth Eninman, Cindy Suarez, Michael Hansen, and Nick Cha ("New Defendants").   Defendants contend that New Defendants must be dismissed because Plaintiffs did not have leave of court to add any additional defendants.   Defendants argue that because Defendants filed a motion to dismiss Plaintiffs' original complaint, no amendments could be made without leave or court or consent of the adverse party.

While not cited by Defendants, it appears they base their argument on Rule 15(a) of the Federal Rule of Civil Procedure.   Rule 15(a)  provides that a "party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. . . . Otherwise a party may amend only by leave of court. . . ."   Defendants' position is that their motion to dismiss the original complaint was a responsive pleading and, as such, Plaintiffs were not free to amend the complaint under Rule 15(a).   Defendants are incorrect.   A motion to dismiss for failure to state claim is not a "responsive pleading" that would terminate a plaintiff's right to amend the complaint.   Saaf v. Lehman Brothers, 123 F.3d 1307, 1308 (9th Cir. 1997); Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995); Schreiber Distrib. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir.1986); Breier v. Northern California Bowling Proprietors' Ass'n, 316 F.2d 787, 789 (9th Cir.1963).   "Neither the filing nor granting of such a motion before answer terminates the right to amend . . . ."   Doe,  58 F.3d at 497.   Because Defendants did not file a responsive pleading, but only a motion to dismiss, Plaintiffs did not need leave of court to amend their complaint once as a matter of course.   See Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1530 (9th Cir. 1995); Doe, 58 F.3d at 497.   Because Plaintiffs could still amend once as a matter of course, Plaintiffs' addition of New Defendants in the amended complaint was proper.[4]   Thus, New Defendants will not be dismissed at this time merely because they were added for the first time into the amended complaint.[5]

---

[4]  Plaintiffs are forewarned that any future amendments may only be made with leave of court.

[5]  For reasons discussed above, the New Defendants are subject to dismissal for other reasons.

**M.  Duplicative Defendants**

The amended complaint names the Madera County Sheriff's Department, Madera County District Attorney's Office, Madera County Department of Corrections, Madera County Adult Probation Department, Madera County Department of Social Services, Madera County Child Protective Services, and County of Madera Risk Management Division.   Defendants request these entities be dismissed because they are sub-divisions of Defendant Madera County, and as such, are redundant defendants.

A claim for civil rights violations pursuant to 42 U.S.C. § 1983 requires a "person" who acted under color of state law.  42 U.S.C. § 1983.   Local governmental units, such as counties or municipalities, are considered "persons" within the meaning of Section 1983.   Will v. Michigan Dept. of State Police, 491 U.S. 58, 70 (1989); Monell, 436 U.S. at 690-91 & n. 54 (1978); County of Los Angeles v. Superior Court, 68 Cal.App.4th 1166, 1171 (1998).   However, municipal departments and sub-units, including police departments, are generally not considered "persons" within the meaning of Section 1983.   United States v. Kama,  394 F.3d 1236, 1239 (9th Cir. 2005) (Ferguson, J., concurring) (findings municipal police departments and bureaus are generally not considered "persons" within the meaning of 42 U.S.C. § 1983); Vance v. County of Santa Clara, 928 F.Supp. 993, 995-96 (N.D.Cal.1996) (holding that "naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality," and dismissing the Santa Clara Department of Corrections from the action); Brockmeier v. Solano County Sheriff's Dept.,  2006 WL 3760276, *4 (E.D.Cal. 2006) (finding that sheriff's department is a municipal department and not a proper defendant for purposes of plaintiff's § 1983 claims).   Finding that these entities appeared to be sub-divisions of Defendant Madera County, the court dismissed the entity Defendants as follows:

> It appears that these Defendants are sub-divisions and departments within Defendant Madera County.   As such, naming these sub-divisions and departments is not necessary.   They should not be listed as Defendants in any amended complaint unless Plaintiffs have a good faith belief that these entities are not sub-divisions and departments within Defendant Madera County.  See Fed.R.Civ.Pro. 11.

The amended complaint does not cure the defect previously noted by the court.   Plaintiffs have

failed to include any allegations that Madera County Sheriff's Department, Madera County

District Attorney's Office, Madera County Department of Corrections, Madera County Adult

Probation Department, Madera County Department of Social Services, Madera County Child

Protective Services, and County of Madera Risk Management Division are not sub-divisions of

Defendant Madera County and redundant defendants.   Accordingly, the court will dismiss these

Defendants without leave to amend, but Plaintiffs may continue to litigate their claims against the

sub-divisions as part of Plaintiffs' claims against Defendant Madera County.

**N.  Leave to Amend**

The court recognizes that "leave to amend should be granted unless the district court

determines that the pleading could not possibly be cured by the allegation of other facts."

Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir.2001) (internal quotation marks omitted);

Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.  (9th Cir. 1996).   The court has already informed

Plaintiffs about the deficiencies noted in this order.  See  Lopez v. Smith, 203 F.3d 1122 (9th Cir.

2000) (if court determines that complaint fails to state claim, leave to amend may be granted to

extent that complaint's deficiencies can be cured);  Noll v. Carlson, 809 F. 2d 1446, 1448 (9th

Cir. 1987).   Neither the amended complaint nor Plaintiffs' motion and briefs filed after the

pending motion to dismiss cure the deficiencies noted above.   Plaintiffs have not asked to file an

amended complaint that corrects any deficiencies.   The court finds that, at this time, Plaintiffs are

unable or unwilling to amend their action to properly allege the constitutional claims and RICO

claims being dismissed by this order.  Thus, these claims and Defendants will be dismissed

without leave to amend at this time.   However, this ruling is without prejudice to Plaintiffs filing

a properly noticed motion to amend in which they include sufficient allegations to state a claim.

**ORDER**

Based on the above memorandum opinion, the court ORDERS that:

1.        Defendants' motion to dismiss is GRANTED in part and DENIED in part;

2.       This action will proceed on the following causes of action:

  a.  The first cause of action, alleging that Defendants County of Madera, Deputy Brian Dee Cunnings, Sergeant Karl E. Hancock, Deputy Tallmon, Deputy J. Adkins, and Deputy Swanson violated Plaintiffs' Fourth Amendment rights and conspired to violate Plaintiffs' Fourth Amendment rights;

  b.  The third cause of action to the extent Plaintiff Wanda alleges that Defendant Sergeant Ackerman and two Doe Nurses caused a serious risk to Plaintiff Wanda's health by refusing to allow her to use a breast pump;

  c.  The fourth cause of action alleging that Defendant Doc's Towing and Transport, Defendant Clifton Ginn, Defendant Madera County, Defendant Deputy Jacob Tallmon, and Defendant Deputy J. Adkins violated Plaintiffs' Fourth Amendment rights by stopping Plaintiffs' van, searching Plaintiffs' van, and impounding the van.

2.       All other causes of action, claims, and defendants are DISMISSED from this action;

3.       Defendants shall file an answer to the remaining causes of action within twenty days of this order's date of service; and

4.       The pending motion to amend the complaint is referred to the Magistrate Judge.

IT IS SO ORDERED.

**Dated:**   **December 21, 2007**       **/s/ Anthony W. Ishii**
                UNITED STATES DISTRICT JUDGE

31