# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES POBURSKY, et al., | ) | 1:07cv0611 AWI DLB |
| | ) | |
| Plaintiffs, | ) | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR INVOLUNTARY DISMISSAL |
| v. | ) | |
| MADERA COUNTY, et al., | ) | (Documents 206 and 207) |
| Defendants. | ) | |

Defendants County of Madera, Richard Ackerman, James Adkins, Brian Cunnings, Karl Hancock, Chris Swanson and Jacob Tallmon ("Defendants") filed the instant motion for involuntary dismissal on August 12, 2010. On September 10, 2010, the Court referred the motion to the undersigned for the entry of Findings and Recommendations. The matter was heard on September 17, 2010, before the Honorable Dennis L. Beck, United States Magistrate Judge. Plaintiffs James and Wanda Pobursky ("Plaintiffs") appeared on their own behalf. Valerie Velasco appeared on behalf of Defendants.

## **BACKGROUND**

Plaintiffs filed the instant action on April 23, 2007. The allegations stem from an incident during which Plaintiffs were arrested and their children taken into custody of Child Protective Services. The action is proceeding on the following causes of action: (1) the first cause of action, alleging that Defendants County of Madera, Deputy Brian Dee Cunnings, Sergeant Karl E. Hancock, Deputy Tallmon, Deputy J. Adkins, and Deputy Swanson violated

1  Plaintiffs' Fourth Amendment rights and conspired to violate Plaintiffs' Fourth Amendment
2  rights; (2) the third cause of action to the extent Plaintiff Wanda Pobursky alleges that Defendant
3  Sergeant Ackerman and two Doe Nurses caused a serious risk to her health by refusing to allow
4  her to use a breast pump; and (3) the fourth cause of action alleging that Defendant Doc's
5  Towing and Transport, Defendant Clifton Ginn, Defendant Madera County, Defendant Deputy
6  Jacob Tallmon, and Defendant Deputy J. Adkins violated Plaintiffs' Fourth Amendment rights
7  by stopping, searching and impounding Plaintiffs' van.

8  Pursuant to the April 29, 2010, order amending the Scheduling Conference Order, non-
9  expert discovery must be completed by October 29, 2010.  Expert discovery must be completed
10 by November 19, 2010.  Trial is currently set for May 4, 2011.

11 On August 12, 2010, Defendants filed the instant motion for involuntary dismissal.  The
12 Court denied Plaintiffs' request to continue the hearing and ordered an opposition filed by
13 September 10, 2010.  Plaintiffs did not file an opposition.

## DISCOVERY BACKGROUND

15 The discovery disputes in this action began with Defendants' July and August 2008
16 motions to compel further responses to written discovery propounded on Plaintiffs.  In response
17 to many interrogatories, Mrs. Pobursky stated that the question was "irrelevant" or referred
18 Defendants to the Second Amended Complaint.  Similarly, Mr. Pobursky objected to numerous
19 interrogatories as requesting "privileged information" pursuant to his right to privacy.  He also
20 referred Defendants to the Second Amended Complaint[1] or previously answered interrogatories.

21 On September 9, 2008, the Court granted the motions to compel, noting that the parties
22 agreed that Plaintiffs would further respond to the discovery and Defendants would withdraw
23 their request for monetary sanctions.  Based on this agreement, the Court ordered Plaintiffs to
24 provide further responses within 30 days.

25 Plaintiffs subsequently failed to adequately respond to discovery.  Plaintiffs continued to
26 withhold background information, reference other documents and provide incomplete responses.

---

[1] Plaintiffs' motion to file a second amended complaint was denied on July 7, 2008.

Based on these inadequacies, Defendants filed their first motion for sanctions on January 16, 2009. Defendants sought to stay the action until Plaintiffs complied with the Court's September 2008 order.

On February 24, 2009, the Court denied the motion for sanctions without prejudice and ordered Plaintiffs to submit further discovery responses within 45 days. The Court explained that it would be more efficient to allow Plaintiffs one final opportunity to provide proper responses, specifically stating:

> As the Court explained during the hearing, Plaintiffs must set forth, in a STRAIGHTFORWARD manner, ALL FACTS THAT SUPPORT THEIR CLAIMS. **IF PLAINTIFFS FAIL TO DO SO, ANY FACTS NOT FAIRLY DISCUSSED IN THEIR DISCOVERY RESPONSES WILL BE PRECLUDED FROM EVIDENCE IN A SUMMARY JUDGMENT MOTION AND/OR DURING TRIAL**. Fed. R.Civ.Proc. 37(b)(2)(A)(ii). Plaintiffs confirmed that they understood this at the hearing.

(emphasis in original). To prevent any confusion, the Court set forth the specific interrogatories and requests for production that required further responses. The Court also explained to Plaintiffs that failure to provide sufficient answers "will result in the preclusion of evidence, as described above." (emphasis in original).

Plaintiffs served their responses on April 13, 2009. On April 23, 2009, Defendants filed a motion for evidentiary sanctions, arguing that Plaintiffs continued to invoke their Fifth Amendment privilege to questions seeking basic background information and that Mr. Pobursky continued to refer to other documents in his responses rather than setting forth his contentions and supporting facts.

The Court granted the motion on June 4, 2009, and found that despite the Court's direction to answer each question at issue in a straightforward manner, Plaintiffs continued "to provide incomplete responses, refer to other documents, or stand by their prior answers." The Court prohibited Plaintiffs from introducing evidence that was not disclosed in response to the discovery at issue. Plaintiffs were not precluded, however, from "relying on facts provided in their verified first amended complaint filed on August 13, 2007, facts provided in Defendants' responses to discovery, facts provided in timely supplements to discovery, or facts disclosed during Plaintiffs' upcoming depositions."

On October 14, 2009, Defendants filed a motion to compel Plaintiffs to respond to deposition questions for which they continued to invoke their Fifth Amendment privilege. On November 23, 2009, the Court granted the motion to compel and imposed monetary sanctions. The Court explained:

> Plaintiffs have refused to answer a myriad of deposition questions, ranging from those seeking basic background information to those directly related to the elements of Plaintiffs' claims. Specifically, Plaintiffs invoked their Fifth Amendment right against self-incrimination for questions related to the arrest warrant, the existence of probable cause, the alleged illegal entry, the alleged illegal vehicle stop and their alleged damages.
>
> The responses to these questions, however, are critical to the elements of Plaintiffs' claims. For example, Plaintiffs refused to answer all questions relating to their daughter, Jami, yet whether Jami was in the car and/or van is a key issue. Similarly, they refused to answer any questions relating to Linda Bye, the owner of the home, even though such information is also critical to their Fourth Amendment claims.
>
> Moreover, Defendants are entitled to fully explore the issues raised in the complaint so that they can meaningfully defend themselves. Plaintiffs contend that they are 'private' people, and while this may be so, they have chosen to bring this action against Defendants and they cannot now prohibit Defendants from discovering the facts supporting their allegations.

The Court also questioned whether Plaintiffs invoked the Fifth Amendment in good faith because they failed to explain how any of the questions could incriminate them. The Court concluded:

> During the hearing, Plaintiffs indicated that they would answer the questions, but were unsure of how to do so. Recognizing Plaintiffs' pro se status, this Court has offered numerous explanations and afforded Plaintiffs many opportunities to properly answer discovery. Given Plaintiffs indication that they would provide answers, the Court will allow them one final opportunity to provide the necessary discovery. If Plaintiffs decide that they do not want to provided further responses, the Court will have no alternative but to recommend dismissal of their action.

The Court ordered Plaintiffs to appear for further depositions, to take place in Courtroom 9, at a mutually agreeable time and date. The Court also imposed sanctions in the amount of $307.50, the cost of court reporter for Plaintiffs' depositions.

On November 5, 2009, Plaintiffs filed a motion for a protective order to prevent the depositions of their three minor children. The Court granted Plaintiffs' subsequent request to continue the December 11, 2009, hearing date, though Plaintiffs ultimately withdrew the motion the day before the scheduled hearing.

On December 4, 2009, Plaintiffs filed a declaration in which they opposed the imposition of monetary sanctions because of "hard economic times" and continued to assert their Fifth Amendment rights. Pursuant to the Declaration of Michael R. Linden filed on December 7, 2009, Plaintiffs did not cooperate in setting a date and time for their further depositions.

On December 21, 2009, Plaintiffs filed a notice of interlocutory appeal in which they purported to appeal the Court's November 23, 2009, order.

The Court denied Plaintiffs' request to certify an interlocutory appeal on February 4, 2010. The Court found that Plaintiffs' invocation of the Fifth Amendment was "baseless" and that "substantial grounds for a difference of opinion do not exist." The Court also set a briefing schedule for Defendants' December 29, 2009, motion for involuntary dismissal based on Plaintiffs' failure to pay the monetary sanctions.

In Defendants' briefing for their motion to dismiss, Defendants explained that on January 8, 2010, they re-noticed the depositions for Plaintiffs' children. Plaintiffs again failed to produce their children, though they provided a "tentative date" of February 22, 2010, for the depositions. On February 3, 2010, Defendants again noticed the children's depositions. On February 18, 2010, Mrs. Pobursky contacted Defendants and indicated that she would not be producing the children because Mr. Pobursky was incarcerated.

On April 6, 2010, the Court issued Findings and Recommendations that the motion to dismiss be denied. The Court explained that it could not find that Plaintiffs acted with bad faith in failing to pay the sanctions:

> The Court recognizes that certain factors may weigh in favor of dismissal, such as the amount of time this action has been pending and the parties' discovery history, but it cannot find that Plaintiffs acted with the requisite intent in failing to pay the monetary sanctions. In their December 4, 2009, filing, Plaintiffs object to the sanctions in part based on "hard economic times" and their need to support their large family. Plaintiffs also believed that the sanctions issue would be addressed in connection with the filing of their notice of interlocutory appeal on December 21, 2009. Although Defendants go to great length to demonstrate why Plaintiffs' belief was incorrect, the legal accuracy of their belief is irrelevant. In determining whether to impose such a severe sanction, the Court will not fault these pro se Plaintiffs for their reasonable confusion.

The Court also found that Plaintiffs' refusal to produce their children for deposition was not a clear refusal to cooperate. Mr. Pobursky was incarcerated during this period and stated that

he did not have his legal materials.  Plaintiffs also believed that the outcome of the interlocutory appeal would affect his children's rights.  Finally, the Court noted that Mr. Pobursky's offer of tentative dates for the children's depositions negated a finding of willfulness or bad faith.

The Findings and Recommendations were adopted on May 11, 2010.

On April 29, 2010, the Court stayed discovery after the parties agreed that a stay was the most practical way to proceed given Mr. Pobursky's incarceration.  The Court stayed discovery until July 23, 2010, the approximate date Mr. Pobursky indicated he would be released.    Mr. Pobursky was subsequently released on May 25, 2010, and Defendants moved to lift the stay.  The Court lifted the stay on June 1, 2010, and ordered the parties to meet and confer as to the depositions of Plaintiffs and their children.

On June 16, 2010, the Court set the depositions of Plaintiffs and their children for July 6 and July 7, 2010.

On June 21, 2010, Plaintiffs requested that the Court reconsider its order lifting the stay because although Mr. Pobursky was no longer incarcerated, "family time [was] needed emotionally, as well as for urgent family issues."  Finding that the basis upon which the stay was imposed no longer existed, the Court determined that Plaintiffs failed to demonstrate that the decision to lift the stay was either clearly erroneous or contrary to law and denied the request on July 12, 2010.

On July 2, 2010, Defendants' counsel filed a declaration indicating that Mr. Pobursky informed him on the afternoon of Friday, July 2, 2010, that his automobile was experiencing mechanical difficulties and that his family would not be able to appear for the depositions set for July 6 and 7.

On July 6, 2010, Defendants' counsel filed a second declaration in which he indicated that Mr. Pobursky now claimed that he did not know when his automobile would be fixed and that he could not clear dates for the depositions for approximately two weeks.  Defendants objected to this delay.

On July 14, 2010, the Court re-set the depositions of Plaintiffs and their children for July 27 and 28, 2010. The Court warned Plaintiffs that failure to appear for the depositions would result in the imposition of sanctions.

Mr. Pobursky appeared for his deposition on July 27, 2010, and continued to invoke the Fifth Amendment. Ms. Pobursky also appeared for her deposition, but she refused to take the oath and did not testify.

Plaintiffs also failed to produce their children for their depositions and filed another motion for a protective order on July 28, 2010. The Court denied the protected order without prejudice on September 27, 2010.

### **PLAINTIFFS' JULY 27, 2010, DEPOSITIONS**

At the beginning of Mr. Pobursky's July 27, 2010, deposition, he invoked the Fifth Amendment in response to questions regarding his current and past employment, where he lived prior to the Oakhurst residence and his current address. Exhibit A, attached to Declaration of Michael R. Linden ("J. Pobursky Dep."), 232-236.

At that point, Judge Beck intervened at the request of the parties and explained to Mr. Pobursky, in detail, that the Court had already ruled that he was not entitled to Fifth Amendment protection on these issues. Judge Beck also explained that if Mr. Pobursky continued to refuse to answer, the only sanctions left would be to preclude his testimony or dismiss the action. J. Pobursky Dep., 236-252.

Despite Judge Beck's explanation, Plaintiff continued to invoke the Fifth Amendment. Specifically, Plaintiff refused to answer any questions regarding his past or current employment, his past or current residences, whether he attended high school or had additional education, whether he had military experience, whether Mrs. Pobursky is the mother of the children at issue, whether the children live with him, what type of schooling his children receive, where Joshua Pobursky was born, whether he has any additional children, any details of his marriage, how he met Linda Bye, whether Jami Pobursky has a daughter named Hannah, whether Nick Wells is Hannah's father, whether he has met a person named Nick Wells, whether he knew of a purported custody order, who owned the van at issue, in what state his driver's license was

issued, Jami's current whereabouts and any questions regarding her involvement in the events at issue.  J. Pobursky Dep., 253-256, 260-261, 263-267, 270-272, 276, 278, 282-286, 288-290, 298, 301, 304-305, 308-310, 313, 325.

At the outset of Mrs. Pobursky's deposition, she requested to speak with Judge Beck and refused to be sworn.  Exhibit B, attached to Declaration of Michael R. Linden ("W. Pobursky Dep."), 4-5.  Mrs. Pobursky told Judge Beck that she did not feel prepared to move forward with the deposition because her answers would be used against her.  W. Pobursky Dep., 5-7.  She also explained that she doesn't want to speak "wrongly."  W. Pobursky Dep., 8.  Judge Beck warned Mrs. Pobursky of the consequences should she choose not to go forward.  W. Pobursky Dep., 16-17, 21.  Despite the warning, Mrs. Pobursky refused to be sworn.  W. Pobursky Dep., 22.

**DISCUSSION**

A.    Legal Standard

Defendants move for involuntary dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, which allows a court to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order..."

In determining whether to dismiss a case as a punitive measure, a district court must weigh five factors: 1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring disposition of cases on their merits; and 5) the availability of less drastic sanctions.  Dahl v. City of Huntington Beach, 84 F.3d 363, 366 (9th Cir. 1996).  In determining the propriety of sanctions, it is permissible to consider all incidents of a party's conduct with respect to discovery in the litigation.  Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1411-1412 (9th Cir. 1990).

B.    Analysis

This action has been pending since April 2007.  Despite the fact that Plaintiffs have had over three years to move this action forward, it has been stalled at the discovery stage since July 2008.  As a result, the parties and the Court have been dealing with the same discovery issues, without meaningful progress, for over two years.

The main discovery issue has been Plaintiffs' improper invocation of the Fifth Amendment right against self-incrimination.  Beginning with the Court's September 2008 order, the Court has repeatedly explained that Plaintiffs are generally not entitled to Fifth Amendment protection in a civil case.  The Court has also repeatedly explained that the questions for which they continue to invoke the Fifth Amendment are relevant to this litigation.  For example, Plaintiffs refuse to answer basic background questions, as well as questions directly related to the elements of their claims.  Such categories of questions include those related to Plaintiffs' prior residences, employment history and educational history.  Plaintiffs also refuse to answer any questions related to (1) Jami Pobursky, including their knowledge of the warrant issued for her arrest; (2) Plaintiffs' children who were present at the time of the July 7, 2006, incident; (3) Linda Bye, the owner of the property on which the July 7, 2006, incident occurred and a witness to the events; (4) their prior contact with law enforcement related to the events at issue; (5) the allegedly improper search of the residence; (6) the July 15, 2006, alleged illegal vehicle stop; and (7) Plaintiffs' damages.

Despite clear direction from this Court on numerous instances, Mr. Pobursky continued to invoke the Fifth Amendment during his most recent deposition in July 2010.  Moreover, in a display of total defiance of this Court's orders, Mrs. Pobursky refused to be sworn at her July 2010 deposition.  Plaintiffs knowingly chose their actions in the face of numerous warnings of the consequences of their conduct.  Most recently, during Plaintiffs' July 2010 depositions, the Court repeatedly explained to Plaintiffs that they were not entitled to Fifth Amendment protection[2] and that if they continued to refuse to answer, this Court would have no alternative but to dismiss this action.  With this knowledge, Plaintiffs chose to continue their pattern of disobeying this Court's orders.

A review of Plaintiffs' deposition testimony reveals that they did provide testimony about the immediate events at issue.  However, as previously explained to Plaintiffs, the world of discoverable information is much wider in scope.  Fed. R. Civ. Proc. 26(b)(1).

---

[2] The Court acknowledges that questions related to Jami Pobursky's current whereabouts may implicate Plaintiffs' Fifth Amendment rights.

9

Plaintiffs' unilateral determination of what information they should be required to disclose not only contravenes this Court's orders, but also prejudices Defendants in their attempt to defend themselves against Plaintiffs' accusations. As also explained to Plaintiffs on numerous occasions, Plaintiffs have chosen to bring this action and they cannot now prohibit Defendants from discovering facts that support Plaintiffs' claims, as well as those that may assist in their defense.

In recognition of Plaintiffs' pro se status, this Court has repeatedly provided detailed explanations and instructions. It has also afforded Plaintiffs two opportunities to correct their written discovery inadequacies and one opportunity to provide complete deposition testimony. With each opportunity, however, Plaintiffs continue to answer based on what they believe to be proper, rather than what this Court has ordered.

Plaintiffs have suggested that they misunderstood certain portions of the Court's orders. For example, Plaintiffs contend that they believed sanctions for their failure to answer interrogatory questions ended the issue and that they would not be subject to further sanctions for refusing to answer deposition questions. Their contention, however, is belied by the transcript of their most recent depositions. As explained above, the Court intervened when Mr. Pobursky continued to invoke the Fifth Amendment. The Court explained no less than six times that Mr. Pobursky was not entitled to Fifth Amendment protection. J. Pobursky Dep., 238, 242, 247, 249, 250, 251. The Court also explicitly explained, more than once, that Plaintiffs would likely face the sanction of dismissal if they continued to refuse to answer. J. Pobursky Dep., 239-240, 247, 248-249, 250-252.

Similarly, the Court repeatedly explained to Mrs. Pobursky that Defendants have a right to discovery and that she needed to go forward with her deposition. W. Pobursky Dep., 10-11, 13, 14, 16, 17, 18, 21. She was also told that she was not entitled to Fifth Amendment protection for the questions at issue. W. Pobursky Dep., 19. The Court explained that if Mrs. Pobursky did not go ahead with her deposition and properly answer questions, Defendants would likely move for dismissal. W. Pobursky Dep., 14, 16.

Plaintiffs have been told, numerous times, that the possibility of dismissal is very real. The Court has already imposed monetary sanctions and evidentiary sanctions to no avail. No lesser sanction is available and the Court therefore finds that this action should be dismissed.

**RECOMMENDATION**

Based on the above, the Court RECOMMENDS that Defendants' motion for involuntary dismissal be GRANTED and that this action BE DISMISSED WITH PREJUDICE.

These Findings and Recommendation are submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 631 (b)(1)(B) and Rule 305 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty days (plus three days if served by mail) after being served with a copy, any party may serve on opposing counsel and file with the court written objections to such proposed findings and recommendations. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1).

IT IS SO ORDERED.

Dated: **October 1, 2010**           /s/ **Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE